John Boyd and John Boyd Ricketts *vs.* John Snyder. John Snyder *vs.* John Boyd and John Boyd Ricketts.

*Construction of Contracts—Contracts of Guaranty—Analogy of Contracts of Guaranty to General Letters of Credit—Extent of Guarantor's liability among several Creditors on faith of the Guaranty—How Compromise of one Creditor's claim affects another—Notice of extent of Credit given on faith of the Guaranty unnecessary.*

John Snyder, with the other directors of the Baltimore County Brewing Company, signed a bond whereby he agreed to be individually responsible in the sum of $2500, for malt and hops sold to the agent of said company for the use thereof, during the space of one year from the date of said bond, provided dealers in malt and hops would sell to the company's agent *on the faith of said bond.* The bond was signed by twelve directors, each binding himself in the sum of $2500, making the aggregate liability on said bond $30,000. The bond when executed was placed in the hands of the Messrs. Strauss, malsters, with whom the company had large dealings, and who sold the company $55,000 worth of malt and hops during the year for which the bond was made, and previous to any sales to said company by the plaintiffs Boyd and Ricketts, who afterwards sold said company $5,667 worth of malt and hops. Previous to the suit of the plaintiffs in this case, the Messrs. Strauss had brought suit against said Snyder on the said guaranty, and by adjustment agreed to accept and afterwards did actually accept $2000, in full satisfaction and discharge of the defendant's liability on the guaranty. The plaintiffs in this case claimed that under the contract of guaranty each obligor was liable in the sum of $2500 to each vendor of malt and hops to the company *on the faith of said guaranty.* The defendants claimed that because the guaranty had never been seen by the plaintiffs, and because Strauss had sold malt and hops to the company to an amount in excess of the aggregate liability of the obligors in the guaranty before the plaintiffs had sold it any, and because the plaintiffs gave the obligors no notice of the extent of the credit given by them on the faith of said guaranty, that therefore no action could be maintained by them in this case. Held:

1st. That acccording to the express terms of the contract, and the true intent of the parties signing it, the liability of each signer is limited to $2500, irrespective of the number of persons with whom the agent may have dealt.

2nd. That the guaranty sued on in this case, though under seal and in special form, was analogous to a general letter of credit, which authorizes any person to whom it is presented to act upon the proposition therein contained. Any person of the class and business therein described is authorized to act on the faith of the guaranty, and when he does so act, a contract at once arises between him and the maker of the instrument.

3rd. That the fact that the guaranty was in the hands of Strauss, and was never seen by the plaintiffs, made no difference. If the plaintiffs were aware of the existence of the guaranty, and furnished malt and hops to the agent of this company *upon the faith of that guaranty*, they were entitled to have the benefit of the security, so far as it had not been exhausted by payments on other contracts within the guaranty.

4th. That the compromise of the claim of Strauss against the defendant, though that claim was for an amount greater than the liability of the defendant under the guaranty, by accepting $2000 in full satisfaction thereof, did not release the defendant from his liability under the guaranty to other creditors, except to the extent of the $2000 so paid.

5th. That the bond in this case was not an offer to guarantee, but an absolute, unqualified undertaking to those furnishing malt or hops on the faith of it, and the obligation attached upon the completion of the contract with the agent authorized to act for the company, and no notice of the extent of the credit given on the faith of the guaranty was necessary to bind the defendant.

CROSS APPEALS from the Superior Court of Baltimore City.

The directors of the Baltimore County Brewery, Malting and Distilling Company, of whom John Snyder was one, employed a certain Peter Schneider as their agent with power and authority to purchase the malt and hops for the brewery, and each director of the company, by a bond executed December 22nd, 1873, agreed to become individually responsible in the sum of $2500, " for the malt and hops which the said manager shall purchase for the use of

the said brewery, during the space of one year from the date hereof." This recital was followed by a stipulation whereby, in consideration that said Schneider would undertake the employment, *and that dealers in hops and malt would sell to him on the faith of the obligation*, they bound themselves severally in the sum of $2500, making a total of $30.000, for the payment of the debts incurred by said agent in the purchase of hops and malts as aforesaid. After the execution of the said bond by the directors, it was placed in the hands of the firm of S. & W. Strauss, malsters, with whom the brewery had large dealings, and they kept possession of it until the trial below.

The plaintiffs below, Boyd and Ricketts, had sold to the agent Schneider, between May 1st and Sept. 30th, 1874, $5667.50 worth of malt and hops upon the faith of the guaranty by the directors, and the Messrs. Strauss within the year from the date of the guaranty had sold to said agent $70,000 worth of malt and hops, $55,000 worth of which sales were previous to May 1st, 1874.

The Messrs. Strauss had brought suit on the guaranty against the defendant in this case, and by adjustment they had agreed upon and did actually accept $2000 in full satisfaction and discharge of the defendant's liability on the contract of guaranty.

On the 2nd May, 1877, the plaintiffs below, Boyd and Ricketts, sued the said John Snyder, one of the directors of the said Baltimore County Brewery, Malting and Distilling Company, claiming that under the contract of guaranty each of the obligors on the bond was individually responsible to each creditor of the agent on the faith of said guaranty, in the sum of $2500. And the defendant claimed that because the contract of guaranty was placed in the hands of the Messrs. Strauss and there remained all the time, and was never seen by the plaintiffs, and because the said Messrs. Strauss furnished on contracts malt amounting to greatly more than the aggregate limit

of the obligation given by the directors, that the plaintiffs could maintain no action on the guaranty.   And the defendant further claimed that no liability arose upon the guaranty in the absence of notice from the plaintiffs of the extent of the credit given on the faith of the instruments.

Both plaintiffs and defendant took exceptions to the rulings of the Court below, and both appealed.

*Plaintiffs' Exception.*—After the evidence was closed, the plaintiffs offered the following prayers:

1. If the jury shall find from the evidence, that the plaintiffs sold malt to Peter Schneider, named in the bond given in evidence, to the amount of $5600, and the said amount is due and unpaid, and that it was sold upon the faith and credit of this bond, then the plaintiffs are entitled to recover the sum of $2500, as against the defendant herein, if they find that he was one of the signers thereof.

2. And that if the jury shall find as stated in the aforegoing prayer, then the plaintiffs are entitled to recover to such extent, even though they shall find that said defendant has heretofore paid on account of said bond to other vendors of malt to said Brewery Company, the sum of $2000 on account of his liability on said bond.

3. That in any event, if the jury shall find as stated in the aforegoing prayers, the plaintiffs are entitled to recover against defendant any sum, the difference between the whole amount of $2500, the amount of said defendant's liability, and such amount as they may find said defendant has paid on account thereof.

4. The plaintiffs pray the Court to exclude from the jury all such parts of the evidence of Solomon Strauss as states any reason or object and purpose of Schneider's leaving the bond with them, or any evidence relating to any amount of sales by him to said Brewery Company of malt between any special dates, this not to be understood as excluding the testimony that he held Snyder on this bond for goods furnished within its terms accepted or

satisfied of any claim upon him and his $2000, and giving him receipt in full.

The Court rejected the first and second, and granted the third and fourth prayers of the plaintiffs; but to the rejection of their first and second prayers the plaintiffs excepted.

*Defendant's First and Second Exceptions* are sufficiently stated in the opinion of the Court.

*Defendant's Third Exception.*—The defendant asked the witness Strauss to state the circumstances under which the bond sued upon in this case was executed and delivered to his firm; to which question the plaintiffs objected. The counsel for the defendant then stated that they proposed to show that the bond sued upon was executed at the request and demand of S. & W. Strauss, to be delivered to them as collateral security for malt to be sold by them to Peter Schneider, the agent of the Brewing Company, for the use of said company, and that it was left with them for that purpose.

But the Court sustained the objection, and refused to allow the offered testimony to go to the jury; to which ruling of the Court the defendant excepted.

*Defendant's Fourth Exception.*—The defendant then offered to prove by the same witness that there was money still due and owing to the Messrs. Strauss by Peter Schneider, for malt sold to him for the use of the Brewing Company, within the year for which the bond was executed, and prior to the date of the first sales made by the plaintiffs as sued for in this case; to which offer the plaintiffs objected, and the Court sustained the objection and refused to allow the evidence to go to the jury, and the defendant excepted.

*Defendant's Fifth Exception.*—The defendant offered the following prayers:

1. By the true construction of the obligation sued upon in this case, the liability of each of the signers thereto is limited to twenty-five hundred dollars, and if the jury

330 MARYLAND REPORTS.

Boyd & Ricketts *vs.* Snyder.   Snyder *vs.* Boyd & Ricketts.

shall find from the evidence, that before the delivery of any of the goods sued for in this case, the plaintiffs were informed by Peter Schneider that he held a bond, such as is declared upon in this case, and that the same was in possession of Messrs. Strauss Bros., malsters, as stated in the evidence; and if they shall further find, that at and before the delivery of any of said goods by the plaintiffs, the said Strauss Bros. had sold and delivered to said Peter Schneider, (the said bond continuing in their possession,) for the use of the Baltimore County Brewing, Malting and Distilling Company, malt on the faith of said obligation, to an amount equal to twenty-five hundred dollars for each of the signers to said bond, and that the claim of said Strauss for malt sold on the faith of said bond, after its execution, and before the first day of May, 1874, is still due and owing to the amount of $2500, less any payment the jury may find to have been made by said Snyder, then the said bond was exhausted before the sales made by said plaintiffs, and they are not entitled to recover in this case.

2. That although the jury may find from the evidence that the goods referred to were sold on the faith of the bond offered in evidence, the plaintiffs are not entitled to recover, unless they further find that before or within a reasonable time after their sale of any part of said goods, they gave notice to defendant of the fact that they intended to sell or had sold on the faith of said bond, or that defendant had knowledge that plaintiffs had so sold or intended to sell.

3. That if the jury believe from the evidence that the goods sued for in this case were sold by the plaintiffs on the faith of the obligation declared upon in this case, without due caution and inquiry, such as an ordinarily prudent man would exercise in a business transaction, and that in the meantime the firm of S. & W. Strauss had sold to the amount of $2500, on the faith of said obliga-

tion, upon which $2000 has been paid by the defendant, and the balance of $500 is still due to S. &. W. Strauss for goods sold to Peter Schneider for the use of the Brewing Company, on the faith of said obligation, then the plaintiffs are not entitled to recover in this case.

4. That if they find that the bond offered in evidence was within two or three days after execution placed by Peter Schneider in the hands of S. & W. Strauss, as collateral security for such malt as they might sell to the brewery named, and that the said bond has remained ever since in the possession of said S. & W. Strauss, and that before the sale of any part of the goods referred to by plaintiffs the said S. & W. Strauss had sold to the amount of about $55,000, on the faith of said bond, all of which was due and owing at the date of the sale of the first goods mentioned in plaintiffs' account, and that the sum of over $30,000 still remains due and unpaid to said S. & W. Strauss for malt sold on the faith of said bond, then the plaintiffs are not entitled to recover.

5. That if the jury find the facts stated in the fourth prayer, and also find that before institution of this suit the defendant paid to S. & W. Strauss, for goods sold on the faith of said bond, the sum of $2000, by way of compromise, on their claim for $2500 under said bond, receiving from them the receipt offered in evidence, the plaintiffs are not entitled to recover.

6. That if the jury find from the evidence that the plaintiffs did not sell the goods referred to on the faith of the bond offered in evidence, they are not entitled to recover, that if the jury find from the evidence that the goods referred to were not sold to defendant or to his agent, but to Peter Schneider, as manager of the Bayview Brewery, the plaintiffs are not entitled to recover.

The Court granted the defendant's sixth prayer, but rejected all the rest. To the rejection of his first, second, third, fourth and fifth prayers, and to the granting of the plaintiffs' third and fourth prayers, the defendant excepted.

Upon these instructions of the Court to the jury, they rendered a verdict for the plaintiffs for five hundred dollars, and from the judgment of the Court upon said verdict entered both sides appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*George Hawkins Williams*, for the plaintiffs, appellants.

1. In support of the exception of plaintiffs to the Court's refusal to grant their first and second prayers, it is insisted that by the true construction of the bond it is an open letter of credit to any and every person to trust P. Schneider, agent, on the faith of it, to the extent of $2500; that the bond is not exhausted by the sale of one vendor to that amount, but that it enures to the benefit of each vendor respectively, to the amount of $2500, irrespective of other sales by other vendors of malt upon its faith.   There are no restrictive words in it giving it any other meaning; nor are there any restrictive endorsements upon it, showing that any person had construed it differently, by selling upon the faith of it, and stating thereon the amount sold.

The bond was necessarily to be with one custodian, and it was immaterial who that was.   It was physically impossible that each and every vendor could hold it.   Its very phraseology indicates that it was addressed to any and every malt dealer to sell on its faith; and in the absence of express notice to the contrary, from some one in interest, each and every vendor had a right to rely on it to the extent of $2500.   Without any endorsement on it stating its exhaustion, this reliance is clear—that is the law as to commercial letters of credit, and no principle distinguishes this bond from them.

The only notice given to plaintiffs as to the custody of the bond by Strauss was that they had kept it to show

their counsel.   No proof was given that Strauss had ever sold one dollar of malt upon the faith of it, or claimed that it only enured to their benefit.   On the contrary, the proof is, as stated, they merely kept it to show to their counsel.   The company annually issued such bonds.   Its existence was truly stated to plaintiffs, who knew of the custom of the company to give them each year to their purchasing agent.

There was such a bond in fact, with no misrepresentation as to its existence, with no endorsement of any kind upon it.   The plaintiffs sold on the faith of it, and they are entitled to the full protection of the $2500 named in it.

Even if not a commercial instrument, given for commercial purposes, the construction would be the same.   *State vs. Wayman,* 2 *G. & J.,* 281.

And a guaranty is always construed with reference to known usages of trade, and according to its true object and intent, and the situation of the parties.   *Lowry vs. Adams,* 22 *Vermont,* 160.

2. The usage and custom of the company in such contracts as this was evidence.

(1.) To corroborate the statements of plaintiffs, that they knew this to be their custom, and that so they stated truly when they said they believed in the existence of this bond, and sold on the faith of it; besides, the same evidence had been given without objection.

(2.) It is also a part of the surrounding circumstances which give to the bond, thus relatively considered, an interpretation very different if it be considered in the abstract. *Maryland vs. Railroad Co.,* 22 *Wallace,* 123; *Reed vs. Insurance Co.,* 5 *Otto,* 31.

For example, this company did an enormous business ; it bought of *one* firm $70,000 of malt in one year ; it bought also of others.   A bond of $30,000, to be exhausted in one purchase from one vendor, would not suffice to

Boyd & Ricketts *vs.* Snyder.   Snyder *vs.* Boyd & Ricketts.

guarantee the purchases from Strauss alone, and no purchases could then have been made from other malt dealers.

(3.) Defendant was a director of the company, contributing himself to this usage and custom as to the purchases by this company. Why then, as to this purchase of the malt, was not his *own* usage and custom proper evidence?

3. The proposed evidence ruled out by the Court in the third exception was an attempt on the part of John Snyder to contradict the very letter of his own bond.

A letter of credit, under seal, to any one to sell on the faith of it, was sought to be turned into a private collateral to Strauss, as made at his instance and request, to be kept only by him for his sole and exclusive benefit.

It is respectfully submitted that no argument is needed to sustain the propriety of the ruling of the Court below as to this matter.

4. Strauss having released John Snyder, the defendant, from all claims against him for malt sold Schneider for the Brewery Company, what had it to do with this case how much others owed him, Strauss, upon the same bond for malt sold? It was irrelevant as to any issue which was before the jury, and properly ruled out. If he chose to release this defendant altogether from the bond, how could Strauss thereby release Snyder as to the claims of all others upon him.

The liability of all the signers upon this bond has been declared to be several and not joint.

5. The fifth exception of the defendant is to the rejection of his prayers.

1. The first prayer was properly refused, for the reasons set forth in this brief under the points as to the plaintiff's exception, and also as to the obscurity concerning to whom the $2500, therein named, was due and owing. It could not mean the defendant, Snyder, because the claim of Strauss, as against him, did not exist at all. It had been fully settled and released.

2. The second prayer asked the Court to instruct the jury that the guaranty of the bond was ineffectual without notice.

Upon such a guaranty no notice is necessary. *Douglas vs. Howland,* 24 *Wend.,* 48; *Smith vs. Dawn,* 6 *Hill,* 544; *Union Bank vs. Coster,* 3 *Comstock,* (*N. Y.*) 203; *Bright vs. McKnight,* 1 *Sneed,* (*Tenn.*) 159; *Caton vs. Shaw,* 2 *Harris & Gill,* 22–23.

The special attention of the Court is asked to the case last cited.

Besides, *no notice* is matter of avoidance or discharge, and this defence should have been specially pleaded.

The issues here made by pleading are *non est factum,* and *performance. White vs. Woodward,* 5 *Man. G. & S.,* (57 *Eng. C. Law,* 814.)

3. The third prayer was properly refused.

(1.) It was confusing. What proof was there that plaintiffs had failed to exercise due caution and inquiry; and due caution as to what? No untruth had been told them. They cautiously inquired as to the existence of the bond, and received a truthful reply. What else was there about which they should have inquired?

(2.) And how could the jury find that $500 was still due upon the bond to Strauss in the face of the proof; and what else was due by the other parties to the bond was irrelevant; it was a *several* obligation.

4. The fourth prayer was faulty in that it assumed that $55,000 was sold on the credit of $30,000. In fact, there was no proof that Strauss would not have sold all that he did without any security; and no matter how much the company or others owed Strauss, that is "*res inter alios.*" The question here is, how much did Snyder owe Boyd, and not how much others owed Strauss.

5. The fifth prayer asks the Court to say that Snyder's payment of $2000 discharged his liability for $2500.

The simple inquiry is, was Snyder ever liable upon this guaranty at all? If so, then he was liable for $2500 at the least. Was he liable to Boyd and Ricketts upon it for anything at any time; if so, has this liability been discharged; and if so, how? Certainly a compromise between Strauss and Snyder cannot affect Boyd and Ricketts.

*Albert Ritchie and Samuel Snowden,* for the defendant, appellant.

1. The question proposed by plaintiff to the witness Boyd, as to the usage of the Brewing Company, was entirely irrelevant. The liability of the defendant depended upon the terms of the obligation into which he had entered, and this liability could not be increased or diminished by proof of any such usage as was set up. Certainly proof that the Brewing Company had formerly given similar bonds, did not tend to establish any issue in the case, for though it might have given similar bonds, *non constat* that the obligation sued upon was given. *Boston S. G. Co. vs. Moore,* 119 *Mass.,* 435.

The question contained in the second bill of exception, and the answer thereto contained in the third, should have been rejected.

2. The obligation sued upon in this case is the several obligation of each one of the twelve signers thereto, for the sum of $2500, making the obligation of the twelve $30,000. It is not addressed to any particular person, but to *dealers in hops and malt, who will sell to Peter Schneider, on the faith of the obligation to the extent of* $30,000. The guaranty is a continuing one, and any one or more selling within the terms of the guaranty to the amount of the obligation, would be entitled, after the payment of that amount, to sell a like amount, and so continue during the time limited by the guaranty. But where the guaranty was delivered to one person who sold to the full limit of

the guaranty, then, until that amount was paid, the guaranty became exhausted, and any other person selling thereon could not acquire any right as against the signers, because they only agreed to be responsible to a certain amount and beyond that their liability could not be extended.   Birchhead vs. Brown, 5 Hill, 634 ; Union Bk. vs. Coster, 3 Comst., (N. Y.) 203, 215 ; Omaha Nat. Bk. vs. First Nat. Bk., 59 Ill., 428, 435 ; Ranger vs. Sargent, 36 Tex., 26 ; Roman vs. Serna, 40 Tex., 306, 322.

The delivery of a general guaranty by the party in whose favor it is drawn, and the sale by the party to whom it is delivered of merchandise, &c., on the faith thereof, fixes the liability of the guarantor, and it immediately becomes a contract with the person to whom it is delivered until the money is paid.   Nevians vs. Bk. of Lansingburgh, 10 Mich., 547, 549 ; Russell vs. Wiggin, 2 Story Rep., 214 ; Walton vs. Dodson, 3 C. & P., 162.

The obligation sued upon was made by the directors of the Brewery, in December, 1873, and delivered to Peter Schneider, and by him delivered to Strauss & Bro., who sold malt, &c., upon the faith of it, and retained it in their possession until it was delivered to their counsel to sue upon.   There was owing to Strauss & Bro. before the first of May, 1874, more than the aggregate amount of the guaranty.   At the time when Schneider applied to plaintiffs to purchase malt from them he did not have the bond, and upon being asked for it he said that it was with S. & W. Strauss, whom the plaintiffs knew to be malsters, and supposed they were selling malt to the Brewing Company. This information was given to them before any of the goods sued for in this case had been sold to Schneider by plaintiffs.   The bond not being shown to the plaintiffs they took the risk of its existence, and being informed that it was executed and had been left with men dealing in the very articles referred to in said bond, by not making any inquiry as to the state of their account before selling they

equally took the risk of the amount of the bond having been exhausted by sales made on the faith thereof by Strauss & Bro. *Lewis vs. Kramer,* 3 *Md.,* 265 ; *Ranger vs. Sargent,* 36 *Tex.,* 40.

The plaintiffs did not therefore use the diligence which was required of them before selling on the faith of an unseen obligation after notice of the obligation being out of the possession of the party to whom it was given, and in the hands of one of the very class of persons for whom it was by its terms intended. The signer of the obligation had protected himself by limiting his whole liability to the sum of $2500, and the plaintiffs might have protected themselves by making inquiry of the parties whom they were informed held the obligation, and ascertaining that the obligation had been exhausted. Having been guilty of great laches themselves, they now seek to visit the consequences of their own acts upon the defendant. If they succeeded in this it would be the greatest injustice.

These principles are embodied in the first, third and fourth prayers of the defendant, and the converse in the first and second prayers of the plaintiffs.

Strauss having sold hops and malt to Peter Schneider, as agent for the Bayview Brewery, to the full amount of $2500, the limit of the liability of the defendant, on the faith of said obligation, before any goods were sold by the plaintiffs, and the same being due and unpaid to him, the plaintiffs could not acquire any right in or claim to the bond, and they had therefore no right to receive from the defendant any amount on account of said obligation, and as Strauss & Bro. received $2000, by way of compromise of their claim, it did not let in the claim of the plaintiffs, for the compromise was made not for the benefit of plaintiffs but of the defendant, and as there was no release under seal executed by Strauss, if there is any further claim under the obligation it is due and owing to Strauss.

The payment, therefore, by Snyder to Strauss of the $2000, could by no possibility give to the plaintiffs any

right which they did not before possess.  Their rights became fixed at the time of the sale of the goods ; and if at that time the limit of the bond was exhausted, they could never acquire any rights therein by subsequent dealings between the signer of the obligation and the holders thereof.

The object of the evidence offered by the defendant and contained in his third and fourth exceptions was to show the state of the account between Strauss & Bro. and Schneider, as it existed prior to the sale by the plaintiff of the malt sued for in this case.  This would have shown to the jury that the limit of the liability fixed by the obligation sued upon in this case had been exhausted before any right had been acquired by the plaintiffs.  If we are correct in the second point, then this testimony was admissible, and the third and fourth prayers of the plaintiffs were properly rejected.

ALVEY, J., delivered the opinion of the Court.

In the case of the present plaintiffs against Kienzel and others, an action brought on the same obligation sued on in this case, this Court held that the obligation was several and not joint, and that a joint action against all the obligors could not be maintained.  If was further held, that each obligor was bound to the extent of $2500, and that his liability could not be extended beyond that amount.  46 *Md.*, 294.

The present is a separate action against one of the obligors ; and the questions are, who are entitled to sue upon the contract?  Under what circumstances can the obligors be held liable?  And what will amount to a discharge of their liability?

The obligors or guarantors were directors of the Baltimore County Brewery, Malting and Distilling Company, and the contract recites that they had employed Peter Schneider their agent, with power and authority to pur-

chase the malt and hops for the brewery ; and that each
director of the Company had agreed to become individually
responsible in the sum of $2500, " for the malt and hops
which the said manager shall purchase for the use of the
said brewery, during the space of one year from the date
hereof." This recital is followed by a stipulation whereby,
in consideration that Schneider would undertake the em-
ployment, *and that dealers in hops and malt would sell to
him upon the faith of the obligation*, they bound themselves
severally in the sum of $2500, making a total of $30,000,
for the payment of hops and malt which Schneider might
purchase for the use of the brewery, during the space of
one year ; and they further obligated themselves to pay
such hop and malt bills, in the total not to exceed $30,000,
or $2500 each, in manner and at the time the agent should
agree to pay them. This obligation, under the hands and
seals of the parties, was dated the 22nd of December, 1873.
And, according to the proof in the cause, soon after its
execution it was placed in the hands of the firm of S. and
W. Strauss, malsters, with whom the Brewery, Malting
and Distilling Company, and its agents, had had large
dealings ; and it remained in their hands until produced
by them on the trial of this case.

It was shown in proof that the plaintiffs, being dealers
in malt, had sold to Schneider, the agent, between May
1st and September 30th, 1874, malt to the amount of
$5667.50 ; and that the Messrs. Strauss, within the year
from the date of the guaranty, had sold to the same agent
malt to the amount of $70,000, and $55,000 of which
sales were between the date of the guaranty and the 1st of
May, 1874. There was proof that the plaintiffs, in selling
the malt to the agent, acted on the faith of the guaranty.
It was also shown, that the Messrs. Strauss had brought
suit on the guaranty against the present defendant, and
that, by adjustment, they had agreed, and did actually
accept, $2000 in full satisfaction and discharge of the
defendant's liability on the contract of guaranty.

It is now contended by the plaintiffs in this action, that notwithstanding the defendant was required to pay, and did actually pay, the sum of $2000, to the Messrs. Strauss, under the contract of guaranty, he is still responsible to the plaintiffs, under that contract, to the extent of $2500. In other words, that the amount of the defendant's liability on the guaranty it not exhausted by the sale of one vendor to the amount of $2500, and the actual payment of that amount by the defendant, but that the full amount of the individual liability, as fixed by the contract, enures to the benefit of each vendor respectively, irrespective of sales made by other vendors upon the faith of the guaranty. But in this construction we do not for a moment agree.

In our judgment, according to the express terms of the contract, and the true intent of the parties signing it, the liability of each signer is limited to $2500, irrespective of the number of persons with whom the agent may have dealt. If the construction of the plaintiffs were adopted as the true one, then, instead of the aggregate amount of $30,000 being the limit for which the directors agreed to be bound, there would be no limit at all ; and the principle of several liability would be of little or no protection to the parties signing the guaranty. The contract having already been construed to create but a several liability, the extent of that liability is exactly fixed by the terms of the contract, and the amount cannot be exceeded, no matter how many purchases may have been made.

Taking this to be the true construction of the contract, the defendant contends, that inasmuch as the contract was placed in the hands of the Messrs. Strauss, who held it for the entire period for which it was to run, and that the plaintiffs never in fact saw it during that time ; and that the Messrs. Strauss furnished on contracts with the agent malt amounting to greatly more than the aggregate limit of the obligation given by the directors, that, therefore, the plaintiffs can maintain no action on the guaranty.

But, from this constrction, as from that contended for by the plaintiffs, we must dissent.

As has been observed, the guaranty sued on is not addressed to the Messrs. Strauss any more than it is to any other dealers in hops and malt.  It in terms authorised any and all dealers in hops and malt to sell to the agent on its account ; and the makers of the guaranty obligated themselves, to a certain amount, to pay such hop and malt bills as the agent should contract.  This contract of guaranty, though under seal and in special form, is analogous to a general letter of credit, which authorizes any person to whom it is presented to act upon the proposition therein contained.  Any person, of the class and business therein described, is authorized to act on the faith of the guaranty ; and when he does so act, a contract at once arises between him and the maker of the instrument.  And being general, if it authorize more than a single transaction, it may be acted on by several persons successively, keeping within the aggregate limit specified. *Union Bank of La. vs. Coster,* 3 *Comstock,* (*N. Y.,* 203.) And so with respect to the present guaranty ; any person, being a dealer in malt, was authorized to act on the faith of it, and being general, addressed to no particular person, several persons in succession could well contract in reference to it, and all be entitled to recover, provided no more be recovered in the aggregate than the amount specified in the contract.  The fact that the instrument was kept by one of the dealers, with whom the agent made large contracts, can make no difference in its construction.  It was to be kept by some person interested in its preservation, and there could be no person more proper as the custodian than the firm dealing most largely upon the faith of it.  Their custody, however, did not preclude other parties from dealing on the faith of the instrument.  If, therefore, the plaintiffs, knowing of the existence of the guaranty, and its general provisions, did in fact contract

with the agent, and furnish the malt, on the faith of the guaranty, then there can be no good reason why they should not have the benefit of the security, at least to the extent that it has not been exhausted by payments on other contracts within the terms of the guaranty. In what manner the rights of several parties acting on the faith of the instrument should be adjusted *inter se;* whether priorities should be allowed, and under what circumstances; are questions not now presented, and we express no opinion in regard to them. The Messrs. Strauss are now making no claim; and so far as the defendant is concerned, it is shown by the receipt produced, that he has been fully and completely discharged from all claim made by them, on account of the guaranty, upon payment of $2000. It is said, however, that this was by way of compromise, and that inasmuch as the claim compromised was more than the $2500, the defendant's liability under the guaranty should be regarded as extinguished. But this, we think, is by no means a fair mode of adjusting the rights of these parties. If the Messrs. Strauss had thought proper to release their claim altogether, or to look to the Brewery and Malting Company alone, instead of relying upon the collateral obligation of the defendant, it could hardly be contended that the defendant, as against other parties, could resort to such claim as means of exonerating himself from responsibility on the guaranty. And if he could not escape liability in such case, why should he escape in this? There is really no distinction in the cases.

The next position urged by the defendant is, that no liability arose upon the guaranty, in the absence of notice from the plaintiffs of the extent of the credit given on the faith of the instrument. But this is clearly not maintainable. The present is no mere offer to guarantee, but it is an absolute, unqualified undertaking to those furnishing malt or hops on the faith of it; and the obligation attached upon completion of the contract with the agent authorized to act

344          MARYLAND REPORTS.

Boyd & Ricketts *vs.* Snyder.   Snyder *vs.* Boyd & Ricketts.

in making the purchases.   The case falls immediately within the principle of the cases of *Canton vs. Shaw,* 2 *H. & G.,* 13, 25, and *Mitchell vs. McCleary,* 42 *Md.,* 374.

With these views in regard to the construction of the contract, and the extent of the defendant's liability thereon, it follows that we concur with the 'Judge of the Superior Court in his ruling on the prayers offered by the plaintiffs.   We think he was entirely correct in rejecting the first and second of those prayers, and in granting the third and the fourth.   And as to the prayers offered on the part of the defendant, we also concur in the rulings of the Judge.   All the prayers rejected by the Court, as well those on the part of the plaintiffs as those on the part of the defendant, are clearly at variance with the views we have expressed in this opinion; and it is not necessary to say more in regard to them than that they were properly rejected.

It only remains to notice briefly two or three questions in regard to the admissibility of evidence, presented in exceptions taken by the defendant.   And the first of these is that presented by the first and second exceptions; the first exception being taken to the question to the witness, and the second to the answer of the witness.   It is only the answer that is of any importance to be noticed.   The witness was one of the plaintiffs, and speaking with reference to his knowledge of the existence of the guaranty, and the reason for the conduct of his firm in contracting with the agent, he stated in answer to the question excepted to, that it was usual for the directors of the Brewery and Malting Company, to give such a bond (referring to the guaranty sued on) to their manager, to secure purchases to be made by him, the Company being of doubtful credit; and that they sold on the understanding that the bond was to be brought to them, and that they sold on the faith of the agent's representation that there was such a bond.   We can perceive no objection whatever to this testimony.   The agent was certainly authorized to make

contracts of purchase on the faith of the guaranty, and he was authorized to represent the fact of its existence; and the fact that it had been, to the knowledge of the witness, the previous habit or usage of the directors of the company to give such an obligation or guaranty, was but confirmatory evidence of the agent's representation as to the existence of the guaranty upon which the plaintiffs were then requested to act.   We perceive, therefore, no error in the admission of this evidence.

Then, as to the third exception taken by the defendant, we have disposed of the question presented in that, in determining that the Court below committed no error in granting the plaintiffs' fourth prayer.   At whose request or demand the guaranty was executed is quite immaterial, if by its construction it embraces the dealings and transactions with the plaintiffs; and that we have shown to be the case.   If this were a controversy between the Messrs. Strauss, who held the guaranty, and the plaintiffs, as to priority of security under it, the question might, possibly, be material; but in this case it is not so, and therefore the question, and the evidence sought to be elicited by it, were properly excluded.

The ruling of the Court as stated in the fourth exception was clearly right.   The defendant had proved by the same witness Strauss, that all claim held by his firm against the the defendant, on account of the guaranty, had been fully satisfied and discharged by the defendant, on payment of $2000.   Whether that firm held claims against Schneider, the agent, the Brewery Company, or the other signers of the guaranty, their obligations being several, was a matter that could constitute no defence to this action, and the fact being immaterial, it was properly excluded from the jury.

Upon the whole, we are of opinion that the judgment on both appeals should be affirmed.

*Judgment affirmed.*

(Decided 28th June, 1878.)