\*JONAS HEYMAN *vs.* JAMES DOOLEY and KAUFMAN
THALHEIMER.

*Guaranty—Notice of Default to Guarantor—Consideration
to Support guaranty—Evidence of Damage sustained.*

In an action on a contract of guaranty it appeared that the
defendants guaranteed in writing that M. would deliver to the
plaintiff five hundred cases of tomatoes, which he had contracted
in writing should be delivered at a certain place and within a
certain specified time.    On the faith of this guaranty the
plaintiff paid M. the contract price of the tomatoes.    HELD:

That, in order to charge the defendants, there was no obligation
on the part of the plaintiff to give them notice of the default
of M.

Where the original contract is founded upon a good consideration,
and, at the time the guaranty was given, the plaintiff, upon the
faith of it, paid to M. the price agreed upon for the tomatoes,
the consideration of the original contract is a sufficient con-
sideration to support the guaranty.

Where the guaranty is for an indefinite sum of money, or for
goods to be sold to the principal debtor, or for the performance
of a contract by another, parol evidence is necessary and
admissible to prove the amount of the debt incurred, or the
damage sustained.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the instance of the defendants, the
Court (PHELPS, J.,) instructed the jury to find a verdict
for the defendants, because the evidence showed that the
contract was in default on the 1st of October, 1891, and

*\*A valuable note to this case in 20 *Law Reps. Anno.,* 257, shows the great num-
ber of decisions on the question of notice of default to bind a guarantor.

that no notice of such default was given by the plaintiff to the defendants until the McAfee Brothers had become insolvent, and had made a deed of trust for the benefit of creditors, dated the 10th of November, 1891. To the giving of this instruction the plaintiff excepted, and the verdict and judgment being for the defendants, he appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*Lewis Hochheimer,* for the appellant.

There being nothing in the nature of the contract itself imposing upon the appellant a duty of giving notice to the sureties, it was their business, not his, to see, that the principal debtor delivered the goods. *Watkins vs. Worthington,* 2 *Bland,* 509, 531; *Walton vs. Mascall,* 13 *M. & W.,* 452; *Douglass vs. Howland,* 24 *Wend.,* 35; *Simons vs. Steele,* 36 *N. H.,* 73; *Gage vs. Lewis,* 68 *Ill.,* 604; *Dickerson vs. Derrickson,* 39 *Ill.,* 574; *Noyes & Co. vs. Nichols,* 28 *Vt.,* 159; *Goring vs. Edmonds,* 6 *Bing.,* 94; *Cordier vs. Thompson,* 8 *Daly,* 172; *Bank vs. Sinclair,* 60 *N. H.,* 100; *Voltz vs. Harris,* 40 *Ill.,* 155; *Vinal vs. Richardson,* 13 *Allen,* 521.

At most, a failure to give notice, except in cases governed by commercial rules, works a discharge of the surety only if he can prove actual resulting damage. *Davis vs. Wells,* 104 *U. S.,* 159, 170; *Ward vs. Wilson,* 100 *Ind.,* 52, 55.

Even if the principal debtor had become insolvent—a fact which is assumed in the prayer, but of which there is no proof—the sureties would not be released. *Lyle vs. Morse,* 24 *Ill.,* 95, 99.

The entire tendency of the Courts is to construe contracts of guaranty in a liberal manner, so as to uphold

the liability of guarantors, and not permit it to be avoided or evaded upon nice or technical grounds. *Lawrence vs. McCalmont,* 2 *How.,* 426, 449–450; *Davis vs. Wells,* 104 *U. S.,* 159, 169.

*John M. Gallagher,* and *Fielder C. Slingluff,* for the appellees.

The contract is imperfect. The law is well established that "to bind a party upon a collateral promise to answer for the debt or default of another, it is necessary under the Statute of Frauds, that the consideration as well as the promise should appear from the writing." *Hutton vs. Padgett, et al.,* 26 *Md.,* 228; *Deutsch, et al. vs. Bond,* 46 *Md.,* 168.

In order to hold the guarantors, the consideration must appear on the face of the contract, or can be collected or implied with certainty from the document itself, and cannot be supplied by parol testimony.

Reference cannot be had to other papers or writings unconnected with the guaranty, and which could not be connected with it, except by the aid of parol proof, and to allow the connection to be made out by such proof "would be an evasion of the Statute, and would open the door to the very mischief the Statute was intended to prevent." *Frank vs. Miller,* 38 *Md.,* 450; *Deutsch, et al. vs. Bond,* 47 *Md.,* 169.

The guarantors were entitled to reasonable notice of the defalcation. *Deutsch, et al. vs. Bond,* 46 *Md.,* 171.

ROBINSON, J., delivered the opinion of the Court.

This is an action upon the following contract of guaranty:

"BALTIMORE, MD., July 29th, 1891.

"We have this day sold to J. Heyman 500 cases No. 3 tomatoes — guarantee against swells and imperfec-

tions—to be delivered on buyers' pavement in the month
of Sept., 1891.    Terms $150 cash, and—

McAFEE BROS.

"We, the undersigned, hereby guarantee the fulfil-
ment of the above contract."

"JAMES DOOLEY, No. 846 Harford Avenue.
K. THALHEIMER, No. 1105 Broadway."

The original contract and the guaranty were written
on the same paper, and were both delivered at the same
time to the plaintiff, upon the faith of which he paid
to McAfee Bros. the contract price for the tomatoes.
McAfee Bros. failed however to deliver the tomatoes,
and a few weeks after the time specified for the delivery
of the same, they became insolvent, and made a general
assignment of their property for the benefit of creditors.
No notice of the default of McAfee Bros. was given by
the plaintiff to the guarantors, and the main question
is whether the failure to give such notice discharged the
guaranty?    The amount involved is not large, but the
question is one of considerable importance, affecting, as
it does, the rights and liabilities of parties upon con-
tracts of this kind, so often occurring in the ordinary
transactions of life, and it is to be regretted that upon
such a question there should be such a conflict of judicial
opinion.    This conflict has mainly arisen from a depar-
ture from the firmly settled rule of the common law in
regard to contracts of guaranty, and the attempt to
engraft upon such contracts, in a modified form it is true,
the law of demand and notice by which the liability of
an indorser of negotiable paper is governed.    The liabil-
ity of a guarantor, like that of an indorser, is contin-
gent, it is true, upon the default of the principal, but here
the analogy ends.    The liability of an indorser of a negoti-
able note does not become absolute unless there has been

a demand upon the maker, and due notice of non-payment by him has been given, not because the indorser has so stipulated in terms, but it is a condition annexed to the contract by the commercial law.　In the case of an absolute guaranty, however, there is no condition annexed to the contract itself, nor is any condition implied by law, requiring the guarantee to notify the guarantor of the default of the principal.　On the contrary, his liability is governed by the same rules of law by which the ordinary liability of one who has broken his contract is determined.　And this being so, if one guarantees in absolute terms the performance of a specific act or contract by another, his liability being commensurate with that of the principal, whatever proof is necessary to support an action against the principal will be sufficient in an action against the guarantor.　And as demand upon the principal is not necessary to support an action against him for a breach of his contract, it is not necessary to allege or prove notice of demand upon and default of the principal to charge the guarantor.　Having guaranteed absolutely and unconditionally that another shall perform a certain specified contract he must, at his peril, see that the contract is performed.　The guarantee must know, it is true, of the default of the principal, and this default may be unknown to the guarantor. But it is not a fact which lies within the *exclusive* or *peculiar* knowledge of the guarantor.　On the contrary, it is a fact in regard to which the guarantor had the easy and accessible means of information, either by inquiry of the guarantee, or of the principal himself.　And having undertaken that the specific contract shall be performed, and the guarantee having accepted and acted upon the faith of the undertaking, it is the duty of the guarantor to see that the contract has been performed; and this being so, there is no obligation, legal or moral, on the part of the guarantee to inform the guarantor of a fact which

the latter having the means of knowledge was himself bound to know. And such was the well settled rule of the common law. As far back as *Somersall vs. Barneby, Croke Jac.*, 287, where the promise was to save harmless the plaintiff from all debts and liabilities that he might incur at the request of the defendant's son, notice was held to be unnecessary, because the defendant might have obtained the information from the son if he desired it. And in *Brookbank vs. Taylor, Cro. Jac.*, 685, where the promise was to pay the rent of a farm, if the tenant did not pay it, notice of the default of the tenant was held to be unnecessary, and for the reason that the promisor was bound to ascertain whether the rent had been paid. And in 3 *Comyn's Dig., title Pleading*, and 16 *Viner's Abr., Notice*, and *Hodsden vs. Harridge*, 2 *Wms. Saund.*, 62 *note*, and in fact in all the standard authorities, the rule is stated that if an act is to be done by a third person who is known, notice of his default is unnecessary. And such is the uniform current of English decisions. In the later case of *Bradbury vs. Morgan*, 1 *Hurl. & C.*, 249, where it was alleged that the defendant's testator, requested the plaintiff to give credit to a third person and promised to guarantee the running balance of his account, the declaration was held to be good, although it did not aver acceptance and notice to the guarantor. And in *Vyse vs. Wakefield*, 6 *Mees. & Welsby*, 452, the law as to notice is summed up by Lord ABINGER as follows:— "The rule to be collected from the cases seems to be this, that where a party stipulates to do a certain thing in a certain specified event, which may become known to him, or with which he can make himself acquainted, he is not entitled to any notice, unless he stipulates for it; but when it is to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given." And PARKE, B., added that "when a specific act is to be done by a third party named, no notice is ne-

cessary." Now in this country it has been held by Courts of high authority, that where the guaranty is by letter for *future advances or contingent* sales, to bind the guarantor, notice must be given not only of the acceptance of the guaranty, but also of the demand upon and notice of non-payment by the principal debtor. In *Douglass, et al. vs. Reynolds, et al.*, 7 *Peters*, 113, where the defendants agreed by letter to become responsible for acceptances or advances in money to be made to the debtor, not exceeding eight thousand dollars, the Supreme Court held that, to charge the guarantors, it was necessary to prove notice to them that the guaranty had been accepted; and further that demand had been made on the principal and notice of his default had been given within a reasonable time. Where a letter of credit is given, notice of its acceptance was necessary, for the reason, says Mr. Justice STORY, "it may regulate in a great measure his course of conduct and his exercise of vigilance in regard to the party in whose favor it is given. And notice of demand upon and non-payment by the principal, was necessary, for the reason that the guarantors are not to be held to any length of indulgence of credit which the creditors may choose; but have a right to insist that the risk of their responsibility shall be fixed and terminated within a reasonable time after the debt has become due."

When the case came before the Court a second time, the rule as to notice of the default was modified, and the failure to give such notice was held to be a matter of defence, and that any loss or damage occasioned by the omission to give notice might be relied on as an entire or partial defence to the action.

As thus modified, the rule has been followed in some States, while Courts in other States have rejected it as being unsupported on principle, and against the settled rule of the common law in regard to contracts of guaranty. But be this as it may, we are not dealing with a

contract of guaranty for future advances, and we have referred to *Douglass vs. Reynolds,* and the reasons upon which the case was decided, because it seems to be the foundation on which some Courts have extended the rule as to notice of the default of the principal, to every contract of guaranty however absolute and unqualified may be its terms. It would be a difficult, and in fact we may safely say an impossible, task to attempt to reconcile the principles by which these cases are supposed to be governed. And without considering them at length it is sufficient to say that the better doctrine, and that which seems to be the best sustained on reason and authority, seems to be that where one guarantees in absolute terms the payment of a specific debt, or the performance of a specific contract, the guarantor must at his peril see that the debt is paid or the contract is performed, and that there is no obligation upon the guarantee to give notice of the default of the principal.

This unquestionably is the rule of the common law, and one adopted by the best considered cases in this country. Nowhere has this rule been more strictly adhered to than in this State. In *Caton vs. Shaw and Tiffany,* 2 *H. & G.,* 14, where F. applied to S. and T. for a loan of five hundred dollars, which was refused without security, and the defendants afterwards wrote to S. and T., saying "Mr. F. tells me that he is about to borrow of you five hundred dollars and wishes me to state I will become his eventual security for payment, this I am willing to do, I have found him punctual on similar occasions;" the Court held this *an absolute guaranty;* no notice of its acceptance was necessary. In no case has this Court ever held in an action upon an absolute guaranty, complete in its terms, that notice of the default of the principal was necessary to charge the guarantor. On the contrary in *Hutton vs. Padgett, et al.,* 26 *Md.,* 231; *Mitchell vs. McCleary,* 42 *Md.,* 374, and *Boyd and*

*Ricketts vs. Snyder,* 49 *Md.,* 344, the rule in *Caton vs. Shaw and Tiffany* has been recognized and approved. It is, it seems to us, a safe and sound rule, and one of easy and practical application. By it the rights and liabilities of the parties are determined by the terms of the contract itself, and not by conditions imported into it by construction of law involving questions whether notice of the default of the principal was given, and if so, whether it was given within a reasonable time, or whether the failure to give such notice occasioned any loss or damage to the guarantors, and, if so, the extent of such loss. It says to one who undertakes to guarantee in absolute terms the performance of a contract by another that he must at his peril see that the contract is performed, and if not performed by the principal, there is no obligation in the guarantee to give notice of such default unless the guaranty so stipulates.

Now, in the case before us McAfee Bros. agreed to sell and deliver to the plaintiff a certain number of cases of tomatoes to be delivered within a certain specified time, and the defendants guaranteed the performance of this contract, and upon the faith of the guaranty, the plaintiff paid to McAfee Bros. the contract price of the tomatoes. It was the duty of the defendants themselves to see that the contract was performed, and if it was not performed by reason of the default of McAfee Bros., the defendants are liable for a breach of the guaranty.

But then it is said there is no consideration to support the guaranty—that there is no consideration because the price to be paid for the tomatoes is not stated in the original contract. But the proof shows what was the contract price, and further that it was paid by the plaintiff to McAfee Bros.

Now it can hardly be necessary to say that the agreement to sell and deliver the tomatoes within a specified

Heyman *vs.* Dooley and Thalheimer.

time, and the payment by the plaintiff of the contract price of the thing sold constitutes in law a consideration.

And, if so, if the original contract was founded upon a good consideration, and at or before the guaranty was given, the plaintiff upon the faith of it, paid to McAfee Bros. the price agreed upon for the tomatoes, then the consideration of the original contract is a sufficient consideration to support the guaranty. *Nabb vs. Koontz*, 17 *Md.*, 283.

In all cases where the guaranty is for an indefinite sum of money, or for goods to be sold to the principal debtor, or the performance of a contract by another, parol evidence is necessary and admissible to prove the amount of the debt incurred, or the damage sustained. The cases of *Frank vs. Miller*, 38 *Md.*, 450, and *Deutsch, et al. vs. Bond*, 46 *Md.*, 169, have no bearing whatever on this point. In the latter case the alleged guaranty was not attached to, or endorsed on, or otherwise by direct reference on its face made part of the contract to which it was supposed to refer.

This being so, and there being no considerations on the face of the guaranty, express or implied, parol evidence was inadmissible to prove the original contract. But such is not the case here. On the contrary, the guaranty is attached to the contract, and, as thus attached, it was delivered to the plaintiff, and upon the faith of it, he paid for the tomatoes. It follows, therefore, from what we have said, that the judgment must be reversed, and new trial awarded.

*Judgment reversed, and*
*new trial awarded.*