## ALFRED E. BOOTH *vs.* THE IRVING NATIONAL EXCHANGE BANK, A Corporation.

*Contracts of guaranty* : *of surety; construction; acceptance; notice and demand waived; delay to principal.  Pleadings; declarations and contracts filed therewith; variance.  Practice Act of Baltimore City. contracts admitted, unless specially denied.*

A. E. Booth executed the following guaranty: "For the purpose of inducing the Irving National Exchange Bank to extend credit to C. S. Norris, their successor or successors, in the form of loans and discounts, and otherwise, and in consideration of the granting of such credit now and hereafter, I, A. E. Booth, do hereby guarantee" * * * the said bank, etc., "the payment at maturity of every and all sums of money that may become due by the said C. S. Norris, their successor and successors," to the said bank, etc., "upon every and all obligations of the said C. S. Norris," etc., "direct and indirect, written and verbal, and implied, that may be now and hereafter incurred;" * * * and, "the time of payment of any said obligations may be extended from time to time, without notice to me or assent from me; and I do covenant and agree that my liability on this guarantee shall be direct, and not conditional upon the pursuit by the said bank, its successors, endorsees or assigns, of whatsoever remedies it or they may have against the said C. S. Norris, the securities or liens that it or they may possess.  Dated, Balto., this 20th day of February, 1907.  Guaranteed until January 1st, 1909."                                    p. 670

A corporation, T. & S., of which Norris was the president, borrowed money from the bank and gave a demand note therefor signed by the T. & S. Company and C. S. Norris, its president; by an endorsement on the note Norris guar-

anteed to the bank prompt payment when due, and consented that the loan might be extended without notice, waived demand, and agreed that all liability on the guaranty should be direct and immediate and not conditional; the note not being paid, when due, demand was made by the bank against Booth, who denied his liability; suit was brought against him, the note and contract of guaranty being filed with the declaration; on appeal from a judgment for the plaintiff it was held: That the indebtedness sued on was covered by, and was in the terms of, the contract of guaranty. p. 673

The guaranty was absolute and no notice of the principal's default was necessary. p. 673

Even when notice to the guarantor of the principal's default is necessary, failure to give notice only operates to release the guarantor in so far as he suffered loss by reason of such failure to give notice. p. 674

Mere delay, or promise of delay, to the principal, without consideration or binding agreement, does not discharge the guarantor. p. 675

When a contract of guaranty is absolute no notice of exceptance is necessary. p. 675

A suit was brought under a contract of guaranty; the contract of guaranty, and a note, on the endorsement of which it was claimed that the obligation under the guaranty arose, were filed with the declaration; the declaration alleged that the guarantor endorsed the note while the testimony showed that he guaranteed it;—it was held that this was not a material variance. p. 676

The liability of a surety is not to be extended by implication beyond the terms of the contract. p. 672

The contract of a surety is a secondary, the contract of a guarantor is a direct, obligation. p. 673

The contract of a guarantor or of a surety should receive such a construction as will best carry out the intention of the parties. p. 673

Under the "Speedy Judgment Act" of Baltimore City, when a note or contract sued on is filed with the declaration,

unless the defendant denies their execution in the next succeeding pleading, they are admitted for the purpose of the
declaration.                                              p. 672

*Decided November 22nd, 1911.*

Appeal. from the Superior Court of Baltimore City (GOR
TER, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK
BRIDGE, JJ.

*Luther M. R. Willis* and *James McEvoy, Jr.,* for the
appellant.

*S. Ridgely Sappington* and *Charles G. Baldwin,* for the
appellee.

BURKE, J., delivered the opinion of the Court.

On the 20th day of February, 1907, the appellant executed
the following guaranty:

"For the purpose of inducing the Irving National Exchange
Bank to extend credit to C. S. Norris, their successor or successors, in the form of loans and discounts, and otherwise, and
in consideration of the granting of such credit now and hereafter, I, A. E. Booth, do hereby guarantee to the extent of
ten thousand dollars, unto the said the Irving National
Exchange Bank, its successors, endorsees and assigns, the payment at maturity of every and all sums of money that may
become due by the said C. S. Norris, their successor and successors, to the said the Irving National Exchange Bank, its
successors, endorsees and assigns, upon every and all obligations of the said C. S. Norris, their successor and successors,
direct and indirect, written and verbal, and implied, that may
be now and hereafter incurred; and I do hereby consent that the
securities of any kind and character that are now and may
hereafter be left with the said the Irving National Exchange

Bank, its successors, endorsees or assigns, as collateral to any such obligations, or upon which a lien may exist therefor, may be exchanged, withdrawn or surrendered, from time to time, and that the time of payment of any said obligations may be extended from time to time, without notice to me or assent from me; and I do covenant and agree that my liability on this guarantee shall be direct, and not conditional upon the pursuit by the said the Irving National Exchange Bank, its successors, endorsees or assigns, of whatsoever remedies it or they may have against the said C. S. Norris, their successor and successors, or the securities or liens that it or they may possess. Dated, Balto., this 20th day of February, 1907. Guaranteed until January 1st, 1909.

(signed)  A. E. Booth,
2532 Eutaw Place, Balto., Md."

The appellant delivered this guaranty to C. S. Norris, who in turn delivered it to the plaintiff in this case, the appellee on this record.

C. S. Norris was the president of Turle & Skidmore, a corporation, which was engaged in the dried fruit business. That corporation borrowed on August 10th, 1908, from the Irving National Exchange Bank the sum of sixteen hundred dollars, and gave to the bank on that date a demand note for that amount. The note bore the signature of Turle & Skidmore, and C. S. Norris, its president. By endorsement on this note C. S. Norris guaranteed to the Irving National Exchange Bank the prompt payment of the loan when due, and consented that the time of payment of the loan might be extended without notice or further assent from him, and he also waived demand of payment of the note from the maker, and agreed that his liability on this guarantee should be direct and immediate, and not contingent or conditional. Payment was demanded of Turle and Skidmore in September, 1908, but the note was not paid, except as to the sum of six hundred dollars, which the bank permitted C. S. Norris to pay on account. The total amount of the principal and interest due upon this note at the time the judgment in this

case was entered was eleven hundred and eighty-two dollars
and six cents.   Demand was made upon the defendant for
payment of the amount due the bank, and he denied any
liability under the guaranty.

Suit was brought under the speedy judgment act in the
Superior Court of Baltimore City, and the plaintiff filed
with the declaration the note, the guaranty of the defendant
and also the guarantee of C. S. Norris to the bank endorsed
thereon.   As the defendant by his next succeeding pleading
did not deny their execution, they must be admitted for the
purpose of the action.*   *Code,* Article 75, section 24, sub-
section 108; *Nicholson* v. *Snyder,* 97 Md. 415; *Horner* v.
*Plumley,* 97 Md. 271; *Commonwealth Bank* v. *Kirkland,*
102 Md. 662.

The case was tried before Judge Gorter without a jury,
and judgment was entered for the plaintiff, from which the
defendant has appealed.

There would seem to be no difficulty as to the principle
to be applied in the construction of the guaranty.   It is said
in *Miller* v. *Stewart,* 9 Wheaton, 680, that: "Nothing can
be clearer, both upon principle and authority, than the
doctrine that the liability of a surety is not to be extended,
by implication, beyond the terms of his contract.   To the
extent, and in the manner, and under the circumstances
pointed out in his obligation, he is bound, and no further.
It is not sufficient that he may sustain no injury by a change
in the contract, or that it may even be for his benefit.   He
has a right to stand upon the very terms of his contract; and
if he does not assent to any variation of it, and a variation
is made, it is fatal.   And Courts of Equity, as well as of law
have been in the constant habit of scanning the contracts of
sureties with considerable strictness.   The class of cases
which have been cited at the bar, where persons have been
bound for the good conduct of clerks, of merchants, and
other persons illustrate that position;" or, as stated by

*See the Baltimore City Code, sec. 312, p. 266.

JUDGE McSHERRY in *Hooper* v. *Hooper,* 81 Md. 169: "Whilst the undertaking of a guarantor technically differs from that of a surety (*Kramph* v. *Hats,* 52 Pa. St. 225), still the contract of guaranty is the obligation of a surety. *Davis* v. *Well, Fargo & Co.,* 104 U. S. 159. Both are accessory contracts; that of a surety is in some sense conditional; that of a guarantor is strictly so. A guaranty is a secondary, whilst a surety is a primary obligation. A guaranty is a mercantile instrument to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical accuracy, but in furtherance of its spirit and liberally to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates, and neither enlarging the words beyond their natural import in favor of the creditor, nor restricting them in aid of the surety. The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties. *Lee* v. *Dick,* 10 Pet. 482; *Mauran* v. *Bullus,* 16 Pet. 528; *Bell* v. *Bruen,* 1 How. 169; *Davis* v. *Wells, Fargo & Co.,* 104 U. S. 159; *Mussey* v. *Rayner,* 22 Pick. 228. The contract of a surety must have such a construction given to it as will carry out the intention of the parties to it. *Englar* v. *Peoples' Fire Ins. Co.,* 46 Md. 333; *McShane & Rogers* v. *Howard Bank,* 73 Md. 135, and the contract of a guarantor ought not to be interpreted by any different rule."

There is evidence in the record that the plaintiff accepted the note of Turle and Skidmore and loaned the money on the faith of the guaranty. Mr. Ward, the cashier of the plaintiff, said, referring to the loan, "the credit in this case was extended upon the responsibility of C. S. Norris, as backed up by the guarantee of Alfred E. Booth," and the record states that the plaintiff "acting on the faith of this guarantee" loaned the sum of sixteen hundred dollars to Turle and Skidmore. Both Turle and Skidmore and C S.

Norris are indebted to the bank,—the corporation on the note and C. S. Norris upon the guaranty endorsed upon the note. The terms of the guaranty signed by the defendant are broad and comprehensive. It was given for the purpose of inducing the plaintiff to extend credit to Norris, and as credit was extended to him under the circumstances stated in the record whereby he became in August, 1908, within the period limited by the guaranty indebted to the bank, there would seem to be no doubt that the indebtedness sued for in this case is covered by and is within the terms of the guaranty, and, as credit was given to Turle and Skidmore upon the faith of the guaranty, it would seem equally clear that the plaintiff was entitled to the judgment, unless the evidence shows that it had done some act or omitted some duty which would bar a recovery.

The acts or omissions of the plaintiff which, it is argued, defeat a recovery are first, that payment of said note was not demanded within the time limit of the guarantee. to wit, January 1st, 1909; second, the extension of the time of payment beyond January 1st, 1909; third, because the proceeds of the note were placed to the credit of Turle and Skidmore, and not to the credit of C. S. Norris. These contentions are presented by the defendant's first and second prayers which the Court rejected. Another objection is that no notice of acceptance of the guaranty was given the defendant.

As to the first objection it is sufficient to say that the guaranty is an absolute one. By it the defendant in express terms agreed that his liability should be direct and not conditional, and, therefore, under the settled law of this State notice of the principal's default or demand upon the defendant was not necessary.

In *Heyman* v. *Dooley,* 77 Md. 162, the Court said: "In the case of an absolute guaranty, however, there is no condition annexed to the contract itself, nor is any condition implied by law, requiring the guarantee to notify the guarantor of the default of the principal. On the contrary, his liability is governed by the same rules of law by which

the ordinary liability of one who has broken his contract is determined. And this being so, if one guarantees in absolute terms the performance of a specific act or contract of another, his liability being commensurate with that of the principal, whatever proof is necessary to support an action against the principal will be sufficient in an action against the guarantor. And as demand upon the principal is not necessary to support an action against him for a breach of his contract, it is not necessary to allege or prove notice of demand upon and default of the principal to charge the guarantor. Having guaranteed absolutely and unconditionally that another shall perform a certain specific contract he must, at his peril, see that the contract is performed. The guarantee must know, it is true, of the default of the principal, and this default may be unknown to the guarantor. But it is not a fact which lies within the exclusion or peculiar knowledge of the guarantee. On the contrary, it is a fact in regard to which the guarantor had the easy and accessible means of information, either by inquiry of the guarantee, or of the principal himself. And having undertaken that the specific contract shall be performed, and the guarantee having accepted and acted upon the faith of the undertaking, it is the duty of the guarantor to see that the contract has been performed; and this being so, there is no obligation, legal or moral on the part of the guarantee to inform the guarantor of the fact which the latter having means of knowledge was bound to know. And such is the well settled rule of the common law."

Even in cases where notice is necessary failure to give notice to the guarantor of the default of the principal would operate to release him from such loss only as he sustained by reason of that failure. *Donnelly* v. *Newbold,* 94 Md. 220. In this case there is no evidence that the defendant sustained any loss because of the want of such notice.

There was no binding agreement between the bank and Norris by which the time of payment was extended. The bank merely allowed Norris to make monthly payments on

account. Mere delay or promise of delay, without considera-
tion, is not sufficient to discharge the guarantor. There must
be a binding agreement.

Norris was told that he might send any money he chose
to be applied on account of the note, but there was no agree-
ment with him on the subject. Mr. Ward testified that he
refused to give Norris any extension whatever on the indebt-
edness, but told him that anything he sent to the bank would
be credited on the note. It would seem to be utterly imma-
terial what disposition was made of the proceeds of the note,
and as the loan was made upon the faith of the guaranty
and the credit extended "upon the responsibility of C. S.
Norris, and backed up by the guarantee of Alfred E. Booth,"
the fact that it was credited to the account of Turle and
Skidmore can not avail the defendant.

Nor was the plaintiff under an obligation to notify the
guarantor that the guaranty had been accepted. Where the
guaranty is absolute no notice of its acceptance is necessary.
*Caton* v. *Shaw and Tiffany,* 2 H. & G. 14; *Hutton* v. *Pad-
gett,* 26 Md. 231; *Boyd* v. *Snyder,* 49 Md. 325.

It follows from what we have said that there was no revers-
ible error in the plaintiff's first prayer. That prayer prayed
the Court to rule as a matter of law that if the Court, sitting
as a jury, found that the plaintiff loaned the sum of $1,600.00
on the promissory note dated August 10th, 1908, introduced
in evidence, subsequent to and upon the faith of the guar-
antee of A. E. Booth introduced in evidence, and if the
Court, sitting as a jury, further found that the payment of
said note was demanded, and the said note was not paid,
and that there became due by the said C. S. Norris upon
said promissory note to the plaintiff the sum of $1,600.00,
which has never been paid, except to the extent of the pay-
ment referred to in the evidence, then the verdict of the
Court, sitting as a jury, must be for the balance found to
be due from the said C. S. Norris; provided the Court,
sitting as a jury, found that there was no extension of time
given by the plaintiff for the payment of the indebtedness.

This prayer stated an hypothesis of fact which, if found to be true, entitled the plaintiff to recover.

The second prayer asserted that under the pleadings the signature of the defendant to the guaranty sued on was admitted. This prayer was properly granted for the reasons above stated.

The defendant's first and third prayers, which are based upon principles of law not applicable to cases of absolute guarantees, were properly refused. We have discussed the theory upon which these prayers were presented.

The defendant's third prayer seeks to prevent a recovery on the ground of variance. It is argued that inasmuch as the declaration alleges that Norris *endorsed* the note of Turle and Skidmore to the bank and as the proof shows he *guaranteed* the payment of the note, there is a real and substantial variance.

As we have stated, the defendant's guaranty, the promissory note and the guarantee of C. S. Norris to the bank were filed with the declaration. The defendant was thereby fully advised as to the cause of action, and fully protected from another recovery upon the same cause of action. Again, there is no variance as respects the guaranty sued on. That is the real cause of action, and the alleged variance is merely in a description of the nature of the act by which Norris became obligated to the bank. Under these circumstances there was no substantial variance and the prayer was properly refused. *Cook* v. *Gill,* 83 Md. 177; *Borden Mining Company* v. *Barry,* 17 Md. 419.

It may be well to say that there is no evidence whatever as to when, by whom, or under what circumstances the words "guaranteed until January 1st, 1909" were written in the guaranty. The defendant offered no evidence, and no explanation of this limitation appears in the record.

> *Judgment affirmed, with costs above and below.*