## HUGHES *v.* HEYMAN.

GUARANTY; NOTICE; PLEADING AND PRACTICE; EXCEPTIONS; REVERSIBLE ERROR.

1. An unreasonable delay in giving a guarantor notice of the default of the principal obligor, or a failure to give any notice, is not a bar to recovery on the guaranty, unless loss is shown to have thereby resulted to the guarantor.

2. An assignment for the benefit of creditors by the principal obligors in a contract of guaranty, without any proof of the extent of their assets and liabilities, is not evidence of any such loss.

3. An exception to an entire paragraph of a charge to the jury, which paragraph contains several separable propositions of law, some of which are correct, is not properly taken and will not be considered on appeal.

4. Where an erroneous ruling of a trial court has not prejudiced the appellant, it is not ground for reversing the judgment.

No. 332.  Submitted October 16, 1894.  Decided November 6, 1894.

HEARING on a bill of exceptions by the defendant in an action on a contract of guaranty.  *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellee, Jonas Heyman, brought suit in the Supreme Court of the District of Columbia to recover from the appellant, James Hughes, upon a guaranty executed by the latter, the amount of damages claimed to have been sustained by him in consequence of the failure of the firm of McAfee Brothers to deliver three hundred cases of a certain brand of tomatoes, contracted to be delivered by them to the appellee, and the performance of which contract the appellant had guarantied.

McAfee Brothers, in the year 1891, were engaged in the canning business in Baltimore City, in the State of Maryland; and the appellee Heyman also resided in that city, and was engaged in business therein. In the year mentioned Heyman entered into three several contracts with

McAfee Brothers for the sale of canned tomatoes by them to him. The first contract was dated May 22, 1891, and was for 200 cases of tomatoes. The second bore date on June 30, 1891, and was for 300 cases. And the third bore date on July 29, 1891, and was for 500 cases. The goods specified in the first and third contracts were to be delivered in September of the same year; those mentioned in the second were to be delivered on or before October 15. The cash was paid by Heyman for the third contract; and notes were given for the first and second, which seem to have been duly paid at maturity. The performance of the second contract was guarantied by the appellant, James Hughes; that of the third by James Dooley and K. Thalheimer, of Baltimore; while the first was not guarantied by anyone.

During the months of September and October, 1891, McAfee Brothers delivered 307 of the 1000 cases provided for by these contracts; but seven of the cases being in bad condition, it is considered that only 300 were delivered. There was no further delivery; and on November 10, 1891, McAfee Brothers failed and made an assignment for the benefit of their creditors. It does not appear that Heyman received anything from this assignment.

Heyman claims that there was no appropriation by McAfee Brothers of the cases that were delivered to any specific contract or contracts; and that therefore he himself (Heyman) appropriated 200 of the 300 cases to the satisfaction of the first contract, that of May 22, 1891; and credited the other one hundred cases to the other contracts, without distinction between them or specification of the amount appropriated to each. On the other hand, it is testified by one of the McAfee Brothers that the whole 300 cases delivered were on account of the secured contracts—those of June 30 and July 29. The testimony on this point is indefinite and conflicting; and from the misunderstanding or absence of understanding between the parties arises the controversy involved in the present suit.

On October 14, 1891, Heyman made demand upon Hughes, the guarantor, for a settlement; and Hughes, claiming to have been informed by McAfee Brothers that the 300 cases had been delivered, refused to come to any settlement. Thereupon, on March 12, 1892, this suit was instituted, in which Heyman sought to recover $500; and the jury gave him a verdict for $441.69, with interest from October 15, 1891—for which judgment was entered in his favor. Hughes appealed from that judgment to this court.

It may be added, as also appears from the record, that Heyman had instituted suit in Baltimore, yet pending, against Dooley and Thalheimer on their guaranty of the third contract; and it is claimed that, upon a trial of that case, he made statements inconsistent with his statements in the present suit.

At the trial of this cause in the court below, the plaintiff asked no instruction; and the defendant presented two prayers for instructions to the jury, the first of which was refused and the second granted. Exception was taken by the defendant to the refusal to grant this first prayer, as well as to a part of the charge given by the court of its own motion to the jury; and the case comes here upon these exceptions.

The defendant's prayer, which was refused, is as follows:

"If the jury believe from the evidence in this cause that the plaintiff neglected for an unreasonable time to give the defendant notice of the default of McAfee Brothers in delivering the tomatoes called for by their contract, and that in the meantime McAfee Brothers failed and made an assignment for the benefit of their creditors, and the plaintiff did not notify the defendant of their default for fourteen days after they had failed and had made an assignment, then the plaintiff would not be entitled to recover, and their verdict should be for the defendant."

The part of the charge objected to is the following paragraph:

"Now, as to the testimony applicable on this subject, the

plaintiff's claim is that there was no application at all (of the tomatoes), and if he is right in his testimony, then he has a right, even at this moment, to make an application as he pleases, and to apply one hundred to one contract and the other two hundred to the other contract. In that case he would be entitled to recover as if no part had been applied; but the evidence for the defendant is in part a little obscure; and it is not perfectly clear whether it amounts to proof that the whole three hundred cases were applied to it or not, or only whether one hundred of the three hundred cases were so applied. Supposing, in the first place, that the whole three hundred cases were directed by McAfee Brothers to be applied to these two secured contracts, it is not claimed that they were applied to any of the contracts alone; but it is claimed that the three hundred cases were applied to the two contracts. If that be so, and they have a perfect right to make that out, that it was so directed to be applied at the time the cases were delivered, then you have to apportion that payment between these two contracts and allow a proper proportion to the five hundred case contract and the rest of it to the three hundred case contract, being the present one; and if that be done, there would be one hundred and fifteen of these cases applicable to the present contract, and the balance would be treated as unperformed. If, on the other hand, only one hundred of these cases were delivered to be applied to these two contracts, you would just have to apportion these between the two, and the plaintiff would be entitled to recover for the whole amount, less whatever would be the proportionate amount."

*Mr. S. T. Thomas* for the plaintiff in error:

1. The failure of Heyman to notify Hughes of the non-delivery of the tomatoes until nearly three weeks after the insolvency of McAfee Brothers was an act which injured the guarantor, and operated to discharge him from his obligation. *Oxford Bank* v. *Haynes,* 8 Pick. (Mass.) 423; *Beebe* v.

*Dudley*, 6 Foster (N. H.), 249; *McCollum* v. *Cushing*, 22 Ark. 540; *Patterson* v. *Reed*, 7 W. & S. (Pa.) 144.

It does not appear but that at the expiration of the time limited in the contract for the delivery of the tomatoes the McAfee Brothers were solvent, and the presumption is that if the guarantee had promptly notified the guarantor of the default in the delivery of the goods, the guarantor would have had it within his power to have protected himself against loss. The guarantee having failed to do this, was guilty of laches and lost his remedy.

2. It was error in the trial court to direct the jury that Mr. Heyman had the right at any time, down to and including the trial, to apply the 307 cases of tomatoes delivered to him by McAfee Brothers upon any one of the three contracts they had with him for tomatoes. The settled rule of the Supreme Court of the United States as to the application of payments is that the debtor or party paying the money may, if he chooses to do so, direct its appropriation; if he fails, the right devolves upon the creditor; if he fail the law will make the application according to its own notion of justice. Neither of the parties can make it after a controversy upon the subject has arisen between them, *a fortiori* not at the trial. *Nat. Bank* v. *Mechanics' Nat. Bank,* 24 U. S. 439.

*Mr. Leon Tobriner* for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

Two questions are raised by the record in this case: First, whether the appellant, the guarantor, was discharged from his liability by reason of any failure on the part of the appellee to give him due notice of the default of the principal obligors, and, second, whether it was error on the part of the court below to instruct the jury as it did with respect to the right of Heyman, the appellee, to make application of the goods delivered in default of such application by the vendor.

1. The condition of facts disclosed in this record does not warrant the instruction requested on behalf of the appellant, apart even from any general rule of law on the subject. John Q. McAfee testified on behalf of the defendant that his firm failed and made its assignment on November 10, 1891 ; and the defendant himself testified that Heyman had notified him of the default on October 14, 1891, which he says was "three weeks after the failure of McAfee Brothers." If he is correct in his date, it was nearly four weeks *before* the failure of McAfee Brothers. Heyman, in his testimony, says it was "about the 11th day of November." Assuming that the defendant intended to say November 14, and not October 14, as the time at which he was notified, the instruction requested would have involved a serious error of fact even in that case. For it would be only three days, and not fourteen days after the failure and assignment. We cannot infer from anything in this record that there was an unreasonable delay on the part of the appellee in giving notice to the guarantor of the default of the person primarily liable.

But it is well settled in the law of guaranty that " an unreasonable delay in giving notice, or a failure to give it altogether, is not of itself a bar to recovery;" and that "both the laches of the plaintiff and the loss of the defendant must concur to constitute a defense." It is likewise the law, that only to the extent of the damage suffered by him is the defendant discharged. *Davis* v. *Wells*, 104 U. S. 159 ; Kent's Commentaries, Part V, p. 124, and notes. There is nothing whatever in this case to show that the appellant had suffered any loss, either partial or total. The assignment of the principal obligors, without any proof of the extent of their assets and liabilities, cannot be regarded as evidence of any such loss.

In a case in the State of Maryland, growing out of one of these same transactions, in which Heyman, the appellee in this cause, sued Dooley and Thalheimer, on account of their

guaranty of the contract of July 29, 1891, the Court of Appeals of that State, in an elaborate opinion delivered by Mr. Justice Robinson, held that guarantors in such cases were not entitled to any notice whatever, and that a contrary opinion announced by some courts was based upon a misapprehension as to the applicability of the mercantile law regarding negotiable paper to transactions of an entirely different character. *Heyman* v. *Dooley and Thalheimer,* 77 Md. 162. Upon this point we need not here express an opinion ; for we regard the question as sufficiently disposed of by the other considerations that have been stated.

2. While, in view of the decision of the Supreme Court of the United States in the case of *The National Bank of the Commonwealth* v. *Mechanics' National Bank,* 94 U. S. 437, in which it is laid down as the law that "neither of the parties can make application of payments after a controversy upon the subject has arisen between them, and *a fortiori* not at the trial," the portion of the charge of the court, to which exception was taken by the appellant, is open to criticism, yet the error, if error under the circumstances there was, is not subject to review by us. The appellant has precluded himself from having a review of that alleged error by the sweeping character of his exception. The exception is too broad. A whole paragraph is taken together and made the subject of one single exception. That paragraph includes statements of fact and statements of law that are not in themselves objectionable, and some statements that are highly favorable to the appellant. The court assumes in that paragraph to state both the theory of the plaintiff and that of the defendant on this point of the application of the goods that were delivered : and it is not pretended that the law is not correctly stated with reference to the hypothesis on which the defendant's claim is based. The alleged error occurs merely with reference to the plaintiff's theory of the case. And yet the whole paragraph is blended and subjected to one undistinguishing objection.

Now, it is the general rule that an appellate tribunal cannot regard a general exception taken to a whole charge. *White* v. *Barber*, 123 U. S. 392. It is also the general rule that, when a series of instructions has been given and exception is taken to them all in bulk, and it appears that any one of the series contains a correct proposition of law, the exception cannot avail. *Harvey* v. *Tyler*, 2 Wall. 328; *Lincoln* v. *Claflin*, 7 Wall. 132; *Cooper* v. *Schlesinger*, 111 U. S. 148; *Mobile, &c., RR. Co.* v. *Jurey*, 111 U. S. 584. In the case of *Lincoln* v. *Claflin, supra,* the Supreme Court of the United States said: " The charge embraces several distinct propositions, and a general exception cannot avail the party, if any one of them is correct." And in the case of the *Mobile, &c., RR. Co.* v. *Jurey, supra,* the same tribunal, referring to the decision in *Lincoln* v. *Claflin,* and reaffirming the same, said : " The charge contained at least two propositions. . . . It is not disputed that the first proposition was correct. But the exception to the charge was general. It was therefore ineffectual. It should have pointed out to the court the precise part of the charge that was objected to." And the court cites with approval the case of *Jacobson* v. *The State,* 55 Ala. 151, in which the rule is thus laid down: " The rule is that the matter of exception shall be so brought to the attention of the court, before the retirement of the jury to make up their verdict, as to enable the judge to correct any error, if there be any, in his instructions to them." And it cites with like approval the statement of the rule by the same Supreme Court, of the State of Alabama, in the case of *Railroad Co.* v. *Jones,* 56 Ala. 507, as follows: "When an exception is reserved to a charge which contains two or more distinct or separable propositions, it is the duty of counsel to direct the attention of the court to the precise point of objection."

In view of these controlling authorities, we are compelled to hold that the appellant's exception to an entire paragraph of the charge of the court in this case, which contains several separable propositions of law, some of them

unquestionably correct, was not properly taken and cannot be considered by us.

But there is another consideration that might well control this point. The alleged erroneous ruling does not seem to have prejudiced the appellant. There was no question in the case as to an application of the goods at the time of trial, or at any specified time after their delivery. The issue was between the claim of the McAfee Brothers that, at the time of delivery, they had stated and had given orders to their driver to state, that the delivery was on account of the secured contracts; and the claim of the appellee that no instructions had been received by him from the McAfees as to the contract or contracts to which the delivery should be applicable, and that he had therefore made the application himself of 200 cases to the liquidation of the unsecured contract, and of 100 cases to the two secured contracts. The statement of the court below, therefore, that, in the absence of application by the McAfee Brothers at the time of delivery, Heyman might make the application himself as he thought proper, either then, or at any time down to the trial, or at the very trial, was no more than the enunciation of an abstract proposition of law that had no bearing upon the controversy then pending before the court. It does not appear that it could have misled the jury.

It will be noticed that the 200 cases provided for in the first or unsecured contract were to be delivered in September, 1891; and the 300 cases in the contract here sued on were to be delivered " on or before October 15, 1891." The 300 cases actually delivered were delivered, it appears, one half in September and one half in October. It might well be questioned whether the McAfee Brothers had any right to make application of any part of these goods on the second contract before the first contract was fully performed. If, in pursuance of the opinion of the Supreme Court of the United States in the case of *The National Bank of the Commonwealth* v. *Mechanics' National Bank*, 94 U. S. 437, already cited, both

parties had failed to make the application, and the occasion had arisen for " the law to make the application according to its own notions of justice," it is not apparent that the law would have done otherwise than direct the application which the appellee claims that he actually made.

On the whole, we do not find any error in this cause for which the judgment should be reversed; *and we therefore affirm the judgment, with costs.*