492 A.2d 1306

GENERAL MOTORS ACCEPTANCE CORPORATION

v.

Seymoure DANIELS.

No. 134, Sept. Term, 1983.

Court of Appeals of Maryland.

June 5, 1985.

256

Seymour Korn, Silver Spring (Korn & Rosenstein, Chartered, Silver Spring, on brief), for appellant.

Jerome H. Berman, Silver Spring (Bogen, Yavener & Berman, Silver Spring, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON *, RODOWSKY and COUCH, JJ.

COLE, Judge.

We shall decide in this case whether a person who signs an installment sales contract for the sole purpose of lending his credit to the purchaser makes the contract of a surety or the contract of a guarantor.

---

\* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion of the Court.

A brief recitation of the facts will place this issue in proper perspective. In June 1981, John Daniels agreed to purchase a used automobile from Lindsay Cadillac Company (Lindsay). Because John had a poor credit rating, his brother, Seymoure, agreed to cosign the installment sales contract. On June 23, 1981, Seymoure accompanied John to Lindsay and signed the contract on the line designated "Buyer." John signed the contract on the line designated "Co-Buyer." Lindsay then assigned the contract to General Motors Acceptance Corporation (GMAC), a company engaged in the business of financing automobiles. In May 1982, GMAC declared the contract in default. After attempting to locate the automobile for several months, GMAC finally recovered the automobile in a "total loss" condition.

GMAC brought this action against the Daniels brothers in the District Court of Maryland sitting in Prince George's County. Because service of process was never effected upon John, the case proceeded to trial against only Seymoure. Although the District Court found that Seymoure had signed the contract as "Buyer," it found that he was a guarantor of the contract between John and GMAC. As such, the District Court determined that GMAC had to attempt to bring suit first against John before it could proceed against Seymoure. Dissatisfied with this ruling, GMAC appealed to the Circuit Court for Prince George's County, which affirmed the decision of the District Court. From that appeal we granted GMAC's petition for writ of certiorari.

I

GMAC marshals several alternative arguments in support of its position that the District Court was clearly erroneous in finding that Seymoure was a guarantor of the contract between John and itself. In particular, GMAC argues that Seymoure was a surety for his brother in this transaction. We agree.

Maryland law has consistently maintained a distinction between a contract of suretyship and a contract of guaranty. *See, e.g., Kushnick v. Lake Drive Building & Loan Association,* 153 Md. 638, 139 A. 446 (1927); *Booth v. Irving National Exchange Bank,* 116 Md. 668, 82 A. 652 (1911); *Hooper v. Hooper,* 81 Md. 155, 31 A. 508 (1895). A review of the distinguishing characteristics of each of these contracts, together with a summary of the relevant principles governing the interpretation and construction of contracts, provides a useful, if not necessary, predicate to the resolution of the issue presented in this case.

### A.

A contract of suretyship is a tripartite agreement among a principal obligor, his obligee, and a surety. This contract is a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor, *see General Builders Supply Co. v. MacArthur,* 228 Md. 320, 326, 179 A.2d 868, 871–72 (1962), and therefore is responsible at once if the principal obligor fails to perform. A surety is usually bound with his principal by the same instrument, executed at the same time, and on the same consideration. As Judge Rodowsky explained in *Rosenbloom v. Feiler,* 290 Md. 598, 604, 431 A.2d 102, 106 (1981) (quoting L. Simpson, *Handbook on the Law of Suretyship* § 17, at 28 (1950)), "[i]n suretyship the [obligee] has or is about to extend credit to [the principal obligor], and the promise is made to protect the [obligee] in case the principal fails to perform."

Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has remedy against both. *See Dixon v. Spencer,* 59 Md. 246, 247–48 (1883). The surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor. *See Weast v. Arnold,* 299 Md. 540, 553, 474 A.2d 904, 911 (1984). With respect to notice of default, the surety is ordinarily held to know every default of his

principal because he is under a duty to make inquiry and ascertain whether the principal obligor is discharging the obligation resting on him. *See* L. Simpson, *supra*, § 41, at 165 ("[I]t is generally not necessary for the creditor to notify the surety of the fact that the principal debtor is in default on his promise. It is the duty of the surety to the creditor to see that the debt is paid."). Consequently, the surety is ordinarily liable without notice.

A contract of guaranty, similar to a contract of suretyship, is an accessory contract. *See Hooper v. Hooper, supra*, 81 Md. at 169, 31 A. at 510. Despite this similarity, a contract of guaranty has several distinguishing characteristics. First, this particular contract is collateral to and independent of the principal contract that is guaranteed and, as a result, the guarantor is not a party to the principal obligation. A guarantor is therefore secondarily liable to the creditor on his contract and his promise to answer for the debt, default, or miscarriage of another becomes absolute upon default of the principal debtor and the satisfaction of the conditions precedent to liability. *See Kushnick v. Lake Drive Building & Loan Association, supra*, 153 Md. at 641, 139 A. at 447 (quoting *Booth v. Irving National Exchange Bank, supra*, 116 Md. at 673, 82 A. at 654). Second, the original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its nonperformance. Rather, the guarantor agrees that the principal is able to and will perform a contract that he has made or is about to make, and that if he defaults the guarantor will pay the resulting damages provided the guarantor is notified of the principal's default. As such, the guarantor insures the ability or solvency of the principal. Third, the contract of guaranty is often founded upon a separate consideration from that supporting the contract of the principal and, consequently, the consideration for the guarantor's promise moves wholly or in part to him. Fourth, and in sum, the guarantor promises to perform if the principal does not. By contrast, a surety promises to do the same thing that the principal

undertakes.[1]  *See* A. Stearns, *The Law of Suretyship,*
§ 1.5, at 5 (J. Elder 5th ed. 1951).  *See generally* 10 S.
Williston, *A Treatise on the Law of Contracts* § 1211, at
685–86 (W. Jaeger 3d ed. 1967) (discussing distinction be-
tween surety and guarantor).

## B.

A suretyship and guaranty are contractual
agreements.  Hence, as with all contracts, they are gov-
erned by the Maryland law on the interpretation and con-
struction of contracts.  It is well settled that Maryland
follows the objective law of contracts.  *See Aetna Casualty
& Surety Co. v. Insurance Commissioner,* 293 Md. 409,
420, 445 A.2d 14, 19 (1982).  A court construing an agree-
ment under this test must first determine from the lan-
guage of the agreement itself what a reasonable person in
the position of the parties would have meant at the time it
was effectuated.  In addition, when the language of the
contract is plain and unambiguous there is no room for
construction, and a court must presume that the parties
meant what they expressed.  In these circumstances, the
true test of what is meant is not what the parties to the
contract intended it to mean, but what a reasonable person
in the position of the parties would have thought it meant.
Consequently, the clear and unambiguous language of an
agreement will not give away to what the parties thought
that the agreement meant or intended it to mean.  *Board of
Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629
(1977).  As a result, when the contractual language is clear
and unambiguous, and in the absence of fraud, duress, or

---

**1.**  Professor Simpson, in his treatise on suretyship, gives the following
distinctions between a surety and guarantor:

> The surety's promise is in form a direct and primary promise to
> pay the debt of another.  It is usually, though not necessarily, made
> jointly or jointly and severally with the principal and for the same
> consideration, and gives rise to a primary duty.  The guarantor's
> promise is separate, is expressly conditioned on the principal's
> failure to perform, and gives rise to a secondary duty.

L. Simpson, *Handbook on the Law of Suretyship* § 14, at 16 (1950).

mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract. *See Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980); *Equitable Trust Co. v. Imbesi,* 287 Md. 249, 271–72, 412 A.2d 96, 107 (1980); *Glass v. Doctors Hospital, Inc.,* 213 Md. 44, 57–58, 131 A.2d 254, 261 (1957); *Markoff v. Kreiner,* 180 Md. 150, 155, 23 A.2d 19, 23 (1941).

With the distinctions between a contract of suretyship and contract of guaranty in mind, and in light of the above principles dealing with the interpretation and construction of contracts, we turn to the case *sub judice.*

## II

Our review of the evidence in this case convinces us that the District Court erred in finding that Seymoure was a guarantor rather than a surety with respect to the installment sales contract. In our judgment the indicia for determining whether a contract is one for suretyship or one for guaranty all point to the existence of a suretyship agreement.

Initially, we note that because the contractual language is clear and unambiguous on its face, we confine our review to the contract itself. Seymoure agreed to purchase the subject automobile by affixing his signature to the installment sales contract on the line designated "Buyer." [2] The contract clearly stated that all buyers agreed to be jointly and severally liable for the purchase of that vehicle. Therefore, under the objective law of contracts, a reasonable person knew or should have known that he was subjecting himself to primary liability for the purchase of the automobile. In short, although uncompensated sureties are favorites of the law, *see State ex rel. Southern Maryland National Bank v. National Surety Co.,* 126 Md. 290, 293,

---

**2.** Although he signed the line marked "Buyer," the trial court determined that he was not the buyer of the automobile.

94 A. 916, 916–17 (1915), Seymoure's careless indifference does not insulate him from primary liability on that agreement.[3]

■ Seymoure executed the same contract as his brother, thereby making himself a party to the original contract. There is no evidence that Seymoure executed an agreement collateral to and independent of this contract. This fact, standing alone, ordinarily negates the existence of a guaranty. As one court observed, "[i]t is certain that in most cases 'the joint execution of a contract by the principal and another operates to exclude the idea of a guaranty and that in all cases such fact is an index pointing to suretyship.' " *Phoenix Insurance Co. v. Lester Bros.*, 203 Va. 802, 807, 127 S.E.2d 432, 436 (1962) (quoting *B.F. Goodrich Rubber Co. v. Fisch*, 141 Va. 261, 269, 127 S.E. 187, 189 (1925)).

Both Seymoure and John signed the contract at the same time. Although not dispositive, this fact tends to establish the existence of a contract of suretyship rather than a contract of guaranty. Furthermore, there are no competent facts indicating that Seymoure expressly agreed to pay for the automobile only upon the default of John. Seymoure also did not qualify his signature in any manner. Thus, by the terms of the contract Seymoure agreed to be primarily and jointly liable with John for the purchase of the automo-

---

**3.** At trial, Seymoure testified that John had asked him to sign the contract as a "convenience" for the finance company. Seymoure claimed that he did not read the contract because the credit representative at Lindsay told him he was only signing the contract so that Lindsay would approve John's credit application, and that he would not be held personally liable for the automobile. Seymoure further testified that the credit representative told him that his credit was being relied upon to finance the vehicle. GMAC interposed two seasonable objections to this testimony. Because the contract in the case *sub judice* is clear and unambiguous, and because there are no allegations of fraud, duress, or mistake, the trial court erred in considering this extrinsic evidence because it had the effect of varying, altering, and contradicting the contract. *See Truck Ins. Exch. v. Marks Rentals, Inc.*, 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980); *Equitable Trust Co. v. Imbesi*, 287 Md. 249, 271–72, 412 A.2d 96, 107 (1980); *Glass v. Doctors Hosp., Inc.*, 213 Md. 44, 57–58, 131 A.2d 254, 261 (1957).

bile. GMAC was therefore not required to proceed against John in the first instance, and the failure of GMAC promptly to notify Seymoure of the default in payments and of the lapse in physical damage insurance coverage does not constitute a discharge.

Finally, on the facts of this case it is immaterial that the contract did not expressly designate Seymoure as a "surety." Whether a party has entered into a contract of suretyship or guaranty is to be determined by the substance of the agreement and not by its nomenclature. *See Ford Motor Credit Co. v. Sullivan,* 170 Ga.App. 718, 318 S.E.2d 188, 190 (1984).[4]

Accordingly, for the reasons stated above, we reverse.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMANDED TO THE DISTRICT COURT FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH THIS OPINION.

SEYMOURE DANIELS TO PAY THE COSTS.

---

**4.** Seymoure directs our attention to the definition of "surety" contained in the Maryland Retail Installment Sales Act, Md.Code (1983 Repl.Vol.), § 12–601(t) of the Commercial Law Article. Under that section, "surety 'includes a guarantor.'" Seymoure, however, advances no argument as to the application of that definition to the issue presented in this case. We therefore decline to express an opinion as to the proper application of that definition in this case.