651 A.2d 456

The **MERCANTILE CLUB, INC.**

v.

**Donald S. SCHERR, et ux.**

**No. 736, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 5, 1995.

758

Howard M. Heneson and Andrew M. Cross (Heneson & Scarlett, P.A., on the brief), Baltimore, for appellant.

Benjamin Rosenberg (Aaron I. Lubling and Rosenberg, Proutt, Funk & Greenberg, on the brief), Baltimore, for appellees.

Argued before BLOOM, WENNER and FISCHER, JJ.

BLOOM, Judge.

Appellant, the Mercantile Club, Inc. ("the Club"), filed a complaint against appellee, Donald Scherr, in the Circuit Court for Baltimore County alleging (1) breach of contract based upon a guaranty by Scherr that secured certain obligations owed to the Club by Anshe Emunah–Aitz Chaim Tifereth Israel Congregation, Inc. t/a Liberty Jewish Center ("LJC"), and (2) fraud. The court granted appellee's Motion for Summary Judgment on the breach of the guaranty contract claim, and appellant voluntarily dismissed its fraud claim without prejudice. Appellant then filed this appeal, in which we are required to consider whether the trial court was legally correct in granting appellee's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Appellant, a social club, owned approximately ten acres of property in Baltimore County, including a clubhouse and recreational facilities ("the club property"). In June 1987, the Club filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland, and was authorized to sell the club property as part of its reorganization plan.

LJC, an incorporated Jewish congregation, owned property in Randallstown, where its synagogue was located. LJC wanted to relocate its synagogue, and expressed interest in purchasing the club property for that purpose. Donald Scherr, an active member of the congregation, served as president of LJC during the negotiations between LJC and the Club.

Appellant agreed to sell the club property to LJC for $2,500,000. LJC paid a $50,000 deposit and agreed to pay $1,850,000 at settlement. Appellant agreed to accept a first purchase money mortgage on the club property for $600,000, the balance of the purchase price.

Because of financing difficulties, the parties amended the contract of sale twice. As president of LJC, Scherr signed the amendments. Under the terms of the second amendment, the

Club agreed to take back a second purchase money mortgage ("the second mortgage") for $900,000, the difference between the $2,500,000 sales price and the approximately $1,600,000 of the Club's outstanding debts on the club property. As additional collateral on the second mortgage, LJC agreed to grant an indemnity second lien on its existing synagogue building and Scherr agreed to grant a second lien on an office building that he owned. The second amendment also contained the following provision: "The second mortgage lien shall be personally guaranteed by Donald Scherr and such other guarantors as the Buyer may be able to furnish, if any, provided that all such guarantees shall be absolute and unconditional."

Additionally, LJC obtained financing from the Yorkridge Calvert Savings and Loan Association ("Yorkridge"). Yorkridge granted LJC a $1,500,000 loan secured by a first deed of trust of the club property and by LJC granting to Yorkridge a security interest in all contracts entered into by LJC for the sale of its Randallstown property.

At settlement, Scherr, in his capacity as president of LJC, executed the second mortgage to appellant in the amount of $800,000. The terms of the second mortgage obligated LJC to pay quarterly interest payments commencing on the second year of the mortgage and continuing until its maturity date, at which time the principal and accrued unpaid interest would become due. Additionally, the mortgage contained a guaranty, signed by Scherr, which stated:

> The following undersigned hereby guarantees the performance of all covenants and conditions set forth in this mortgage to be performed on the part of the mortgagor, this guaranty being absolute and unconditional, and the undersigned waiving all defenses ordinarily available to guarantors except that of payment in full.

In January 1990, LJC filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. LJC filed a Motion for Valuation of Security and for Determination of Classes ("Motion for Valuation") requesting that appellant's claim against LJC under the $800,000

second mortgage be deemed fully secured. Appellant received the Motion for Valuation and did not oppose it. The bankruptcy court granted the motion.

In July 1990, LJC submitted its Plan of Reorganization ("the plan") to the bankruptcy court. The plan provided that Yorkridge's claim against LJC would be considered the Class 1 claim and that appellant's claim against LJC would be considered the Class 2 claim. Both the club property and the Randallstown property were to be assigned to a Nominee, who was to "take, hold and administer, in trust, the [club property and the Randallstown property], and to sell such property for the benefit of the holders of the Class 1 and Class 2 Claims, and for the benefit of the Debtor." The Nominee would apply the proceeds from the sale of the properties first, to the payment of expenses of the administration of the properties; second, to the payment of the Class 1 claim in full; and then to the payment of the Class 2 claim in full. In order to vest title to the real estate in the Nominee free and clear of all liens and encumbrances, the plan proposed that the bankruptcy court void any and all liens on the properties, including the Club's second mortgage, and transfer the liens to any proceeds from the sale of the properties. The plan provided:

Execution and delivery by [LJC] of a deed conveying the [Randallstown property and club property] to the Nominee is the sole obligation of [LJC] under this Plan to the holders of Class 1 and Class 2 Claims. Execution and delivery of the deed shall comprise the satisfaction by [LJC] and novation of Class 1 and Class 2 Claims, subject to the provisions of this Plan.

By an Order dated 14 September 1990, the bankruptcy court confirmed LJC's Plan of Reorganization. The Order provided as follows:

ORDERED, that any and all creditors are bound by the Plan, that any and all property of the estate of [LJC] is vested in [LJC], free and clear of all claims and interests of creditors, and that [LJC] be, and it hereby is, DISCHARGED from the payment of any debt arising before

the date of this order (excepting only the payment obligations of the debtor to Class 3, Class 4, and Class 5 creditors, explicitly set forth in the Plan) . . .

\* \* \* \* \* \*

ORDERED, that the liens securing payment of the Class 1 claim and the Class 2 claim against The Mercantile Club Property and the Randallstown Property (as those terms are defined in the Plan) be, and they hereby are, AVOIDED, without prejudice as to their validity, priority or extent, with such liens transferred to the proceeds of sale of such properties . . .

LJC continued to make mortgage payments to the Club until discharged by the bankruptcy court's order. After the bankruptcy court issued its order, appellant did not receive payments on the mortgage. It filed a complaint against Scherr in the Circuit Court for Baltimore County, based upon his liability under the terms of the guaranty contained in the second mortgage. In March 1993, the Club amended its complaint to include a second count, stating a cause of action against appellee for breach of contract with regard to the second mortgage, and a third count, stating a cause of action against appellee for fraud.[1]

In a motion for summary judgment on appellant's claim of breach of the guaranty, appellee contended that LJC was not in default on its obligations under the second mortgage because the mortgage payments were current as of the date of confirmation of the plan, and that thereafter, by virtue of confirmation of that plan, LJC was relieved of all obligations to make mortgage payments. Scherr further argued that he could not be held accountable to appellant under his guaranty of the second mortgage because there cannot be a call on a guaranty unless and until the principal obligor defaults. The court granted appellee's Motion for Summary Judgment, stat-

---

1. The fraud count relates to the validity of Mrs. Scherr's signature on an Indemnity Mortgage executed at the time of settlement securing appellee's guaranty with property owned by Mr. and Mrs. Scherr.

ing that "there cannot be default for failure to make payments during the period of the bankruptcy" and, unless the bankruptcy court ruled that there had been a default, "there [had] to have been a default prior to the filing of the bankruptcy petition."

The court then granted appellant's request to dismiss the fraud claim without prejudice, and appellant then filed a timely appeal of the summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is appropriate where there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. Md.Rule 2–501. We review the same information from the record and decide the same issues of law as the trial court. "Although all reasonable inferences from the facts are to be considered in the light most favorable to the non-moving party, Maryland courts narrow their focus to those facts that will 'somehow affect the outcome of the case.'" *Warner v. German,* 100 Md.App. 512, 516, 642 A.2d 239 (1994) (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)). Ordinarily, we are confined to the basis relied upon by the lower court, and we may not explain the lower court's conclusion by introducing new legal theories. *Warner,* 100 Md.App. at 517, 642 A.2d 239. Therefore, in reviewing a trial court's grant of summary judgment, this Court must determine whether the trial court's ruling was legally correct. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993); *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990).

## I. WAS THE FILING OF CHAPTER 11 BANKRUPTCY A TRANSFER CONSTITUTING A DEFAULT?

■ The second mortgage states:

It shall be deemed a default under this Mortgage if the Mortgagor shall sell, or cease to own, or encumber, or mortgage, or transfer, or dispose of the within described

property in any other manner involving a transfer of possession, without the prior written consent of the Mortgagee.

Appellant argues that filing for Chapter 11 bankruptcy effected a transfer of property without its consent and thus constituted a default under the terms of the mortgage. We disagree.

Appellant rests its case on the provision in the Bankruptcy Code that transfers the debtor's property into a bankruptcy estate. Specifically, the Code states:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section,[2] all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a) (1988). The bankruptcy estate created under Section 541 of the Bankruptcy Code is a legal fiction created to facilitate the purposes of bankruptcy law. As appellee correctly argues, the default-on-transfer provision of the second mortgage is limited to a transfer of "possession" of the club property, and LJC never transferred possession of the club property. LJC retained title to the club property as the debtor in possession. Specifically, the plan confirmed by the bankruptcy court provided that "[t]he [Randallstown property and the club property] shall remain, until sold, property of [LJC]'s estate, and property of the trust herein created." Therefore, LJC's property remained in LJC's possession, and we hold that appellee did not violate the default-on-transfer provision of the second mortgage by instituting Chapter 11 bankruptcy proceedings.

## II. LIABILITY UNDER THE GUARANTY

Appellant contends that appellee's obligation to appellant was that of a surety, rather than that of a guarantor. Al-

---

2. The exceptions listed in the Code do not concern the case *sub judice*.

though confirmation of the plan by the bankruptcy court excused LJC's liability under the second mortgage, appellant argues, it did not excuse appellee's liability as a surety of LJC's obligations. Therefore, appellant asserts, because appellee has a valid obligation to appellant under the suretyship agreement in the second mortgage, appellee should be held liable for the obligation. We agree.

### A. Suretyship vs. Guaranty

■ Appellant and the lower court focussed on the difference between a suretyship and a guaranty, so we begin our discussion by addressing this distinction. The Court of Appeals defined a suretyship as follows:

> A contract of suretyship is a tripartite agreement among a principal obligor, his obligee, and a surety. This contract is a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor, *see General Builders Supply Co. v. MacArthur*, 228 Md. 320, 326, 179 A.2d 868, 871–72 (1962), and therefore is responsible at once if the principal obligor fails to perform. A surety is usually bound with his principal by the same instrument, executed at the same time, and on the same consideration. . . .
>
> Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has remedy against both. *See Dixon v. Spencer*, 59 Md. 246, 247–48 (1883).

*General Motors Acceptance v. Daniels*, 303 Md. 254, 259, 492 A.2d 1306 (1985). In a suretyship, "discharge of the principal obligor does not discharge the surety." *Weast v. Arnold*, 299 Md. 540, 555, 474 A.2d 904 (1984) (citations omitted). The Court distinguished a surety from a guaranty by explaining:

> A contract of guaranty, similar to a contract of suretyship, is an accessory contract. *See Hooper v. Hooper*, 81 Md. 155, 169 [31 A. 508] (1895) Despite this similarity, a contract of guaranty has several distinguishing characteristics. First, this particular contract is collateral to and independent of the principal contract that is guaranteed and, as a result, the guarantor is not a party to the principal obligation. A

guarantor is therefore secondarily liable to the creditor on his contract and his promise to answer for the debt, default, or miscarriage of another becomes absolute upon default of the principal debtor and the satisfaction of the conditions precedent to liability. *See Kushnick v. Lake Drive Building & Loan Association,* 153 Md. 638, 641 [139 A. 446] (1927) (quoting *Booth v. Irving National Exchange Bank,* 116 Md. 668, 673 [82 A. 652] (1911)).

*General Motors Acceptance,* 303 Md. at 260, 492 A.2d 1306.

■ In the case *sub judice,* appellant relies on a clause from the second mortgage that purports to establish that appellee undertook to be a surety to satisfy LJC's obligations to appellant.[3] The second mortgage contains a separate provision, signed by appellee, which states:

The following undersigned hereby guarantees the performance of all covenants and conditions set forth in this mortgage to be performed on the part of the mortgagor, this guaranty being absolute and unconditional, and the undersigned waiving all defenses ordinarily available to guarantors except that of payment in full.

The language in the clause executed by appellant does not condition the obligation upon a default by LJC, but creates a principal obligation on the part of appellee to satisfy LJC's responsibilities under the mortgage. As appellant correctly points out, appellee did not guarantee the *performance by LJC* of the covenants and conditions set forth in the mortgage; he guaranteed the *performance of LJC's covenants and conditions* as set forth in the mortgage. This distinction establishes a direct and primary promise on the part of appellee to insure the performance of LJC's obligations—payment of the mortgage debt. Additionally, the club property serves as the

---

**3.** The Second Amendment to the Contract of Sale contains language purporting to create a guaranty. Specifically, the Second Amendment to the Contract of Sale contains the following clause: "The second mortgage lien shall be personally guaranteed by Donald Scherr and such other guarantors as the Buyer may be able to furnish, if any, provided that all such guarantees shall be absolute and unconditional."

consideration for both Scherr's obligation and LJC's obligation. Thus, as the circuit court stated in its opinion, appellee's obligation more closely resembles a suretyship than a guaranty.

## B. LJC's Bankruptcy

■ Next, we consider the effect of LJC's Chapter 11 bankruptcy on appellant and appellee. By filing a petition for Chapter 11 bankruptcy and receiving approval of its Reorganization Plan from the bankruptcy court, LJC was discharged from its liability to appellant. 11 U.S.C. § 362(a) (1988). Appellant is prohibited from filing a claim against LJC to recover under the mortgage. *Id.*

■ Although confirmation of a reorganization plan in bankruptcy discharges the debtor from liability on the debt, it does not extinguish the debt; rather, creditors can prosecute their claim against codebtors or guarantors. *In re Fasse,* 40 B.R. 198, 200 (Bankr.D.Colo.1984); *In re Bracy,* 449 F.Supp. 70, 71 (D.Mont.1978); *see also Copeland v. Merrill Lynch & Co.,* 162 B.R. 743, 746 (Bankr.E.D.La.1993) (asserting that discharge in federal bankruptcy does not result in "extinguishment" of underlying debts, but merely releases debtor from personal liability for the debts). Specifically, the Bankruptcy Code states: "[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e) (1988).[4] Thus, confirmation of a debtor's plan of reorganization in bankruptcy does not discharge the obligations of a nondebtor guarantor or surety. *See In re Sure–Snap Corp.,* 983 F.2d 1015, 1019 (11th Cir.1993); *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985) (noting that "the bankruptcy court could not discharge the liability of a nondebtor as part of a reorganization plan to discharge the liability of the debtor"); *Allen v. Kaplan,* 255 Md. 409, 415, 258 A.2d 211 (1969) (stating that "[t]here is ample authority to support the general proposition

---

4. *See Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985) (providing a brief history of section 524(e) of the Bankruptcy Code).

that a discharge in bankruptcy has no effect on the obligation of the person jointly liable with the bankrupt."). Thus, in the case *sub judice,* a modification of the terms of the second mortgage through a plan of reorganization is a modification only as to the contractual relationship between the debtor in bankruptcy and its creditors.

Because bankruptcy only avoids the debts of the debtor, we must next consider what obligations a guarantor or surety has after the debtor's plan of reorganization in bankruptcy is confirmed. We conclude that the guaranty or surety cannot be eliminated, because "[e]xtinguishing or modifying the collateral obligation upon the reorganization of the principal debtor would defeat the very purpose of the guaranty—*i.e.,* protection against the principal's inability to pay." *Allen,* 255 Md. at 417, 258 A.2d 211 (citations omitted). Additionally, as the United States Court of Appeals for the Second Circuit explained in *In re Nine North Church Street, Inc.,* 82 F.2d 186, 188 (1936):

> By its guaranty, [guarantor] promised to meet certain obligations and these are not affected by reorganization of this debtor. Any modification of this contract can only be justified by the bankruptcy power which extends only to the relief of insolvent or hard pressed debtors. If [guarantor] is in that class, it must come into court and establish the fact. It cannot modify its obligations by the reorganization of other insolvents.

Therefore, although the debtor is no longer liable for the debt, under a declaration of bankruptcy, the debt still exists, and a guarantor's or surety's pledge to pay the debt remains. *See In re Fasse,* 40 B.R. 198, 200 (Bankr.D.Colo.1984).

*Westinghouse Credit Corp. v. Hall,* 144 B.R. 568 (Bankr. S.D.Ga.1992) exemplifies the principle that a guarantor remains liable for the debt after the debtor is no longer liable under a declaration of bankruptcy. *Westinghouse* involved personal guaranties executed by individual partners on behalf of a general partnership to produce a loan. *Id.* at 571. Subsequent to receiving the loan, the partnership entered into

bankruptcy proceedings. *Id.* The proceedings in the bankruptcy court resulted in adjustments to the loan that had the effect of discharging some of the debt. *Id.* at 573. The partners alleged that the bankruptcy proceedings had relinquished their liability under the guaranty. *Id.* The court held that

> [b]ecause a partnership is treated separately from its partners during bankruptcy, it necessarily follows that the guaranty will not be automatically discharged simply because agreements were made during the bankruptcy proceedings between the partnership and its creditors to reduce some of the debt.... the Court is constrained to find that the actions taken by the parties in the present case do not affect the validity of the note and guaranty nor the [partners'] underlying obligations.

*Id.* As in the case *sub judice,* alterations in the agreement between the debtor and creditors during the bankruptcy proceedings do not affect the guarantors' obligation.

In his brief, appellee places great emphasis on the fact that LJC made mortgage payments to appellant until the bankruptcy court approved the plan, which terminated any further obligation on the part of LJC to continue to make payments to appellant under the second mortgage. Appellee fails to realize that the plan only terminated LJC's obligation to make payments under the second mortgage; it did not terminate or alter appellee's obligation. As the court in *In re Nine North Church Street* noted:

> To allow a guaranty to be modified every time the principal debtor found itself in financial difficulties would be to make a guarantor's obligation nominal only. The very purpose of, and only value in, a guaranty is as a protection against the principal's inability to pay. Without a reorganization of the guarantor and a showing that its financial conditions justify relief from its obligations, the contract between the obligees and the guarantor is inviolate.

*In re Nine North Church Street, Inc.,* 82 F.2d at 188.

■ Furthermore, as a surety under the second mortgage, appellee is liable for the mortgagor's obligations under the

mortgage, and appellant's failure to receive payment according to the terms of the second mortgage resulted in a default on those obligations. Because appellee is a surety, appellant was not required to give notice to him of a default on the obligation. *General Motors Acceptance v. Daniels,* 303 Md. 254, 259–60, 492 A.2d 1306 (1985). As the Court of Appeals explained: "With respect to notice of default, the surety is ordinarily held to know every default of his principal because he is under a duty to make inquiry and ascertain whether the principal obligor is discharging the obligation resting on him." *Id.* (citations omitted). Therefore, when appellee became aware of LJC's discharge in bankruptcy, his pledge to satisfy LJC's obligations under the second mortgage was activated. Appellee failed to assume his duty under the guaranty and make the payments required under the second mortgage.

Although LJC's filing of bankruptcy did not constitute a default on the second mortgage, nonpayment of the regular interest installments pledged under the mortgage was a default. Therefore, because appellee is a co-obligor with LJC for the second mortgage, appellee was required, as a surety, to make the mortgage payments once LJC was excused from making payments by the bankruptcy court. The obligation under the second mortgage still existed, and the bankruptcy court released only LJC from making the payments. Under the express terms of the second mortgage, a default in the payment of any installment of principal or interest entitled appellant to accelerate the mortgage debt, and appellee is liable to appellant for the debt.

### C. Novation of the Debt

■ Appellee contends that the plan, approved by the bankruptcy court and not objected to by appellant, acted as a novation of the mortgage debt. He asserts that, by effecting a novation of the mortgage debt, the parties thereby eliminated the guaranty and thus relieved Scherr of any obligation to the Club. Appellee relies on the specific language of the plan:

Execution and delivery by [LJC] of a deed conveying the [Randallstown property and club property] to the Nominee

is the sole obligation of [LJC] under this Plan to the holders of Class 1 and Class 2 Claims. Execution and delivery of the deed shall comprise the satisfaction by [LJC] and *novation of Class 1 and Class 2 Claims*, subject to the provisions of this Plan.

(Emphasis added).

■ In Maryland, the rules of law regarding a novation are well-settled. A novation is a new contractual relation that extinguishes the contract that was previously in existence between the parties. *Dahl v. Brunswick Corp.*, 277 Md. 471, 481, 356 A.2d 221 (1976). A novation consists of four essential requirements: "(1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7–8, 344 A.2d 65 (1975).

Appellee contends that, in the case *sub judice*, the purported novation arose from the Reorganization Plan approved by the bankruptcy court discharging LJC in bankruptcy. "A bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors," however. *Union Carbide v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982) (citing *In re Kornbluth*, 65 F.2d 400, 402 (2d Cir.1933)); *see also Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985). Novation is a contractual concept, and not an aspect of bankruptcy law.

■ During oral argument, appellee placed great significance on appellant's failure to object to the plan, construing appellant's failure to object as consent to a novation. We disagree. "A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings." *In the Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1351 (5th Cir.1989); *R.I.D.C. Industrial Developments Fund v. Snyder*, 539 F.2d 487, 490 n. 3 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977) ("The bankruptcy court can affect only the relationships of debtors and creditor. It has no

power to affect the obligations of guarantors"); *see also United States v. Stribling Flying Service, Inc.*, 734 F.2d 221 (5th Cir.1984); *Union Carbide Corp.*, 686 F.2d at 595. Additionally, even if a creditor does not expressly reserve its rights against a guarantor during the course of a bankruptcy proceeding, the creditor does not thereby forfeit its rights against the guarantor because, under the provisions of the Bankruptcy Act, such a reservation of rights exists without express statement. *First National City Bank v. Kline*, 439 F.Supp. 726, 728 (S.D.N.Y.1977). Therefore, appellant's failure to object to the plan is of little significance beyond the boundaries of the bankruptcy court.

Moreover, the purported novation, created by the Reorganization Plan during the bankruptcy proceedings, operates under federal bankruptcy law and affects only the creditors and the debtor, not the guarantors or sureties of the debtor. Therefore, we do not believe that the language employed by the debtor in drafting its Reorganization Plan constituted a valid novation of appellee's surety obligation to appellant.

### D. Conclusion

We have addressed only the one issue presented to us in this appeal: whether the circuit court was legally correct in granting summary judgment in favor of appellee. The merits of this case, including such issues as the significance of the handwritten designation "president" that follows appellee's signature to the guarantee clause in the mortgage, will be matters for the circuit court to determine upon remand.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.