UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1356

CHARLES LURIA,

Plaintiff - Appellant,

versus

STANDARD FEDERAL SAVINGS AND LOAN ASSOCIATION;
RESOLUTION TRUST CORPORATION,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Jillyn K. Schulze, Magistrate Judge.  (CA-
02-3656-8-JKS)

Argued:  October 28, 2004          Decided:  November 23, 2004

Before WILKINSON and WILLIAMS, Circuit Judges, and Glen E. CONRAD,
United States District Judge for the Western District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Aaron Robert Caruso, ABOD & CARUSO, L.L.C., Rockville,
Maryland, for Appellant.  Jaclyn Chait Taner, FEDERAL DEPOSIT
INSURANCE CORPORATION, Washington, D.C., for Appellees.  **ON BRIEF:**
Ann S. DuRoss, Assistant General Counsel, Colleen J. Boles, Senior
Counsel, FEDERAL DEPOSIT INSURANCE CORPORATION, Washington, D.C.,
for Appellees.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

The appellant, Charles Luria ("Luria"), was the general partner of C. L. Marsh/Inglewood Limited Partnership ("Marsh/Inglewood"). Marsh/Inglewood planned to construct a hotel in Landover, Maryland. In October 1988, the partnership obtained construction financing from Standard Federal Savings Bank ("Standard Federal") in the form of two notes, one for $9,800,000 and the other for $1,700,000. Both notes were secured by deeds of trust that granted Standard Federal a lien on the property as well as on the proceeds of the business. After Marsh/Inglewood missed several payments, Standard Federal exercised its right to receive all operating revenues attributable to the hotel's operation.

On June 20, 1991, Luria and a representative of Standard Federal entered into a letter agreement whereby all proceeds generated by the hotel would be deposited in an account maintained and operated by Standard Federal. Under the terms of the letter agreement, Marsh/Inglewood would continue to operate the hotel and would submit requests to Standard Federal for the payment of operating expenses with priority for the mortgage, payroll and suppliers. Standard Federal would wire the requested funds directly to Marsh/Inglewood's account.

Beginning on June 24, 1991, Marsh/Inglewood commenced depositing the hotel proceeds into the Standard Federal account. The letter agreement remained in effect until October 1992, when

2

Marsh/Inglewood filed for Chapter 11 bankruptcy protection. During the term of the letter agreement, a variety of federal, state and local taxes went unpaid.

Luria himself filed for personal bankruptcy protection in May 1994 because of issues related to the hotel and the unpaid taxes. At some point in the bankruptcy case, Luria asserted that Standard Federal was responsible for the unpaid taxes. The bankruptcy trustee declined to pursue a claim for the unpaid taxes against Standard Federal. After the trustee filed a notice that he was abandoning any such claim, the bankruptcy court permitted Luria to pursue the claim himself. Ultimately, Luria's personal bankruptcy estate paid $550,000 to satisfy the various obligations to federal, state and local taxing authorities.

In November 2002, Luria filed a complaint in the United States District Court for the District of Maryland against Standard Federal and the Resolution Trust Corporation, the receiver for Standard Federal. Luria claimed that Standard Federal had a duty to pay federal, state and local taxes during the period covered by the letter agreement and asserted claims against Standard Federal for breach of fiduciary duty, indemnification, negligence and fraud. In March 2004, the United States Magistrate Judge[*] granted the motion for summary judgment filed by the FDIC, the Resolution

---

[*] This case was decided by the Magistrate Judge upon consent of the parties under 28 U.S.C. § 636(c)(1).

Trust Corporations's successor. The Magistrate Judge held that Luria had failed to demonstrate that Standard Federal had any legal duty to pay the taxes related to the hotel's operation.

On appeal, Luria contends that the Magistrate Judge erred in granting summary judgment to the defendants because Standard Federal did have contractual, legal, and statutory duties to ensure the payment of all taxes during the term of the letter agreement. We affirm.

We review the Magistrate Judge's grant of summary judgment de novo. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review the record in the light most favorable to the non-moving party. Hooven-Lewis, 249 F.3d at 265.

Under Maryland law, the interpretation of a written agreement is initially a question of law for the court. Suburban Hosp., Inc. v. Dwiggins, 596 A.2d 1069, 1075 (Md. 1991). When the language of an agreement is unambiguous, however, a court will not construe the agreement. General Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1309 (Md. 1985). Instead, the parties are presumed to have meant what a reasonable person in their positions would have thought the plain language stated. Id.

The letter agreement between Luria and Standard Federal provided as follows:

1.    All proceeds from the hotel are to be deposited in the Standard Federal account on a daily basis.
2.    Funds will be wired or transferred into your account upon submission of the bills you are requesting to be paid. We will pay bill [sic] on a daily or weekly basis, or whenever they need to be paid. Chris Long, Rick Morrison and myself are authorized to permit a transfer of funds.
3.    All funds from the property are to be used for the property. The priority of payment will be for the mortgage, payroll and suppliers.
4.    There is no reason for any changes in management.

The Magistrate Judge examined the language of the letter agreement and concluded that the language was clear, unambiguous and complete, and did not indicate any intention for Standard Federal to assume Marsh/Inglewood's tax obligations or to act in Marsh/Inglewood's best interests. Although Standard Federal did pay the hotel's real estate taxes on one occasion, the Magistrate Judge concluded that this isolated payment did not support a conclusion that Standard Federal had assumed all of the hotel's tax obligations. We agree with the Magistrate Judge's well considered analysis of the letter agreement and the circumstances at issue here. The record does not support the existence of a contractual duty on Standard Federal's behalf to pay the hotel's tax obligations.

Luria contends that Standard Federal had a legal duty under the common law to pay the hotel's taxes because a portion of the hotel proceeds represented funds that were held in trust for

5

the taxing authorities. As the Magistrate Judge noted, however, there is no basis in the evidence or law upon which to find that Standard Federal held the hotel's proceeds in trust for taxing authorities. Control of the hotel's proceeds, alone, does not provide a basis for a legal duty, particularly when Marsh/Inglewood retained the capacity to request funds for the payment of all its operating expenses.

On appeal, Luria references several provisions of the Internal Revenue Code and Maryland's general tax law claiming that these sections provide a statutory basis for Standard Federal's duty to pay the hotel's tax obligations. His reliance on these statutes, however, is unavailing.

A person having control of the payment of wages may be deemed an employer responsible for withholding taxes. 26 U.S.C. § 3401(d). In this case, however, Standard Federal did not pay Marsh/Inglewood employees and did not make any determination as to which employees should be paid. Standard Federal simply forwarded funds to Marsh/Inglewood. Marsh/Inglewood retained control and discretion in the payment of wages to its employees.

A "responsible person" may have a duty to ensure payment of withholding taxes if that person had the actual authority or ability to pay the taxes owed. 26 U.S.C. § 6671(b); Plett v. United States, 185 F.3d 216, 219 (4th Cir. 1999). Also see Md. Code Ann., Tax-Gen. § 10-905(d). Here, however, Marsh/Inglewood

6

retained the authority for day-to-day management of the hotel, controlled the company's payroll, had the power to write checks after receiving funds from Standard Federal, and had the sole ability to hire and fire employees. Thus, Marsh/Inglewood, not Standard Federal, was the "responsible person" liable for the payment of withholding taxes.

A lender may be liable for payroll taxes if that lender "supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge . . . that such employer does not intend to or will not be able to make timely payment or deposit" of the required amounts of payroll taxes. 26 U.S.C. § 3505(b). Liability under this section "presupposes advances for the specific purpose of paying wages with actual notice or knowledge that the trust funds will not or cannot be paid by the employer." Abrams v. United States, 333 F. Supp. 1134, 1147 (D.C. W. Va. 1971). Here, however, there is no evidence in the record that Standard Federal had actual notice or knowledge that Marsh/Inglewood or Luria were not paying the proper amount of withholding taxes.

We agree with the Magistrate Judge that Standard Federal was under no duty, legal, contractual or statutory, to pay the tax obligations of Marsh/Inglewood. As a result, we also agree that it is unnecessary to consider Standard Federal's argument that Luria's claims are barred by Maryland's three year limitations period. The decision of the district court is therefore

AFFIRMED.