**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1328**

BANK OF COMMERCE,

            Plaintiff - Appellee,

      v.

MARYLAND FINANCIAL BANK,

            Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Ellen L. Hollander, District Judge. (1:14-cv-00610-ELH)

Argued: December 9, 2015            Decided: February 16, 2016

Before MOTZ and FLOYD, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Gibney wrote the opinion, in which Judge Motz and Judge Floyd joined.

**ARGUED:** Demetrios George Kaouris, MILES & STOCKBRIDGE, P.C., Easton, Maryland, for Appellant.  Margaret Moran McKee, PROCTOR & MCKEE, P.A., Towson, Maryland, for Appellee.  **ON BRIEF:** K. Donald Proctor, PROCTOR & MCKEE, P.A., Towson, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GIBNEY, District Judge:

Bank of Commerce ("Commerce") and Maryland Financial Bank ("MFB") disagree about what the word "first" means in a contract, and $227,323.82 hangs in the balance. MFB and Commerce's predecessor in interest, Bank of the Eastern Shore ("BOES"), entered into a Participation Agreement in which MFB purchased an interest in one of BOES's loans. When Commerce later foreclosed on the underlying property, it paid MFB its pro rata share of the foreclosure proceeds. MFB, however, thought the contract entitled it to "first out" payment. In a "first out" payment scheme, MFB would recover its entire interest in the loan before Commerce recovered anything, giving MFB a greater share of the foreclosure proceeds. Because the Participation Agreement, when read in full, provides for pro rata distribution of foreclosure proceeds, we affirm the District Court's grant of summary judgment to Commerce.

We also reject MFB's argument that an October 2011 letter explains or modifies the Participation Agreement. The Participation Agreement is unambiguous, so the Court cannot refer to extrinsic evidence to interpret it. Further, the letter expressly "affirms" the terms of the Participation Agreement, and thus does not modify it.

## I. BACKGROUND

In November 2006, BOES loaned a borrower three million dollars to acquire and renovate a country club. In August 2008, BOES and MFB entered into an agreement in which MFB bought a participation interest in the loan. The Participation Agreement said that "MFB's interest in the loan, expressed as a percentage, is **25.00%** (the **'Participant's Share'**)." J.A. 11 (emphasis in original).

Several sections of the Participation Agreement are important for purposes of this appeal. First, Section 7 explains how the parties must divide payments received. It says:

> **7. Payments.** [BOES] shall report to MFB, MFB's share of all accrued interest, fees, payments . . . [and] promptly remit to MFB its share based on the priorities indicated below. **[Check only one box.]**
>
> > a. [ ] **First Out**: First, to MFB, until each time as MFB has received an amount equal to its Participation Amount, then to [BOES] until such time as [BOES] has received an amount equal to its Retained Amount and then ratably between [BOES] and MFB in an amount equal to their respective allocable shares (based on MFB's Participant Share) of interest, fees and any other payments other than principal amounts.
> >
> > b. [ ] **Last Out: . . .**
> >
> > c. [X] **Pro Rata:** Ratably between MFB and [BOES] (with appropriate allocation

3

> of fees, interest and other payments,
> based on MFB's Participant's Share).
>
> d. [ ]  **100%:** . . . .

J.A. 14-15.  The parties put an "X" in the space for option (c), requiring a pro rata sharing of payments from the borrower.

Section 8 obliges the parties to divide any losses on the loan in the same pro rata method that they split up payments. Specifically, this section says that the parties will "share [losses] pro-rata in accordance with . . . [their] respective participation interests."  J.A. 15.

Read together, Sections 7 and 8 divide payments and losses on a pro rata basis, determined by the participation interest in the loan.  MFB's participation interest is 25%, so it would receive 25% of the borrower's payments, and suffer 25% of any losses on the loan.

Finally, Section 9 sets forth the method to allocate the proceeds from a foreclosure.  In pertinent part, Section 9 says:

> (b) If foreclosure upon the Collateral is the action taken, [BOES] shall promptly remit to MFB its percentage interest first, as hereinabove specified, of all net proceeds received by [BOES] as a consequence of such foreclosure proceeding . . . .

J.A. 16.  This section also provides that if BOES acquires any property during the foreclosure process, both BOES and MFB will own the property "equal to their respective percentage interests in the Loan."  J.A. 16.

4

In October 2011, BOES emailed MFB a letter from BOES's then-president (hereinafter, "the Letter"). It reads:

> This letter is to affirm the Bank of the Eastern Shore has agreed to remit all proceeds on a FIRST OUT BASIS to MFB if the above loan (collateral) is obtained as a consequence of a foreclosure proceeding by BOES. This condition is contained in the Participation Agreement, dated August 17, 2008, Section 9(b), Default by Borrower.

J.A. 128. According to MFB, the Letter responded to MFB's "request [for] confirmation from BOES that any foreclosure of the property owned by [the borrower] would result in MFB getting paid its participation interest first from the proceeds of any foreclosure sale." J.A. 125–26.

In April 2012, Commerce assumed BOES's interest in the loan. In August 2013, Commerce initiated foreclosure proceedings against the borrower. At the time, the outstanding loan principal balance was $2,302,765.12. The proceeds from the foreclosure sale were $1,393,469.86. Commerce paid 25% of these proceeds, or $348,367.46, to MFB.

In March 2014, Commerce sued MFB to clarify the parties' rights to the proceeds from the foreclosure proceeding. Commerce argued that, under the Participation Agreement, MFB should receive 25% of the foreclosure proceeds, or $348,367.46—a pro rata distribution. On the other hand, MFB argued that it should receive its remaining 25% interest in the loan (i.e., 25%

5

of the outstanding loan balance) from the foreclosure proceeds, or $575,691.28—a "first out" distribution.

The parties filed cross-motions for summary judgment in the District Court. Both parties contended that the Participation Agreement clearly and unambiguously supports their position. Alternatively, MFB argued that the Participation Agreement contains ambiguity, requiring the District Court to consider the Letter as extrinsic evidence. MFB also provided an alternative spin on the Letter—that it modified the Participation Agreement. The District Court entered summary judgment for Commerce, finding that the Participation Agreement unambiguously supported Commerce's position and, therefore, that the District Court need not consider the Letter.

## II. ANALYSIS

This Court reviews a district court's decision granting summary judgment de novo. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006). A district court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). When parties file cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of

6

law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation omitted).

## *A. THE AGREEMENT*

Pursuant to Section 20 of the Participation Agreement, Maryland law applies to this dispute. J.A. 19. Maryland courts "apply the law of objective contract interpretation." Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co., 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (internal citation and alteration omitted); see id. ("[The Court of Appeals of Maryland's] jurisprudence on contract interpretation is well-settled and oft-stated."). Thus, when interpreting a contract, courts need not discern the actual mindset of the parties at the time of the agreement, but instead must "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." Id. at 52, 73 A.3d at 232 (quoting Gen. Motors Acceptance v. Daniels, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)). In other words, "a contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." Id. at 51–52, 73 A.3d at 232 (quoting Sy-lene of Wash., Inc. v. Starwood Urban Retail II, LLC, 376 Md. 157, 167, 829 A.2d 540, 546 (2003)).

When interpreting a contract, a court must read the contract in its entirety, "and, if reasonably possible, effect

7

must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." Id. at 52, 73 A.3d at 233 (internal citation omitted). The court should strive to read the contract provisions "harmoniously, and not construe them either to render one nugatory or to create unnecessary conflict among them." Walker v. Dep't of Human Res., 379 Md. 407, 420, 842 A.2d 53, 61 (2004); see also Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co., 113 Md. App. 540, 554, 688 A.2d 496, 503 (1997) ("A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement.").

If, however, after reviewing the contract, "the language of the contract is susceptible of more than one meaning to a reasonably prudent person," an ambiguity exists. Cnty. Comm'rs of Charles Cnty. v. St. Charles Assocs. Ltd. P'ship, 366 Md. 426, 445, 784 A.2d 545, 556 (2001); see also Slice v. Carozza Props., Inc., 215 Md. 357, 368, 137 A.2d 687, 693 (1958) ("The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding . . . ."). If an ambiguity

8

exists, "the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." Cnty. Comm'rs of Charles Cnty., 336 Md. at 445, 784 A.2d at 556 (quoting Heat & Power Corp. v. Air Prods. & Chems., Inc., 320 Md. 584, 596-97, 578 A.2d 1202, 1208 (1990)).

In this case, the relevant section of the Participation Agreement, Section 9(b), reads: "If foreclosure upon the Collateral is the action taken [in response to default], [BOES] shall promptly remit to MFB its percentage interest first, as hereinabove specified, of all net proceeds received by [BOES] as a consequence of such foreclosure proceeding." J.A. 16. While the contract does not define the term "percentage interest," the Court reads the sentence as any reasonable person would on first bite: BOES must pay MFB its percentage share (i.e., 25%) of all net proceeds.

MFB hangs its argument on the word "first" in the operative sentence of Section 9(b). MFB argues that "first" means "first out," so that MFB should get the foreclosure proceeds "until [such] time as MFB has received an amount equal to its Participation Amount." J.A. 14. The parties, however, knew how to say "first out" if they desired. In fact, in Section 7 they defined both "First Out" and "Pro Rata." That they defined "First Out" as a term of art in the contract, and then chose not

9

to use the term in the foreclosure section of the agreement, requires the Court to find that "first" means something other than "first out."

The use of the word "first" in the foreclosure section could mean a number of things, such as the order in which MFB should send out checks after a foreclosure proceeding. Whatever "first" means in Section 9(b), it does not mean the defined term "First Out." Everywhere else in the contract, the parties agreed to a pro rata distribution of profits and losses. Accordingly, it makes sense that they agreed to the same pro rata distribution in the foreclosure section, especially where they chose not to use the defined term "First Out."

Awarding MFB a pro rata share of the foreclosure proceeds fits with the remainder of Section 9(b), which uses the term "percentage interest" to dictate how BOES and MFB would share any property acquired—as opposed to funds received, as addressed in the first sentence—by BOES during a foreclosure proceeding.[1] The only sensible reading of this provision results in MFB having a 25% interest in any property acquired, because a "first out" distribution could not feasibly work with interests in real property. Thus, under MFB's reading of the Participation

---

[1] This could occur if BOES had bought the property at foreclosure, or if it accepted a deed to the land in lieu of foreclosure.

Agreement, it would receive two different amounts depending on whether the foreclosure proceeding resulted in a sale or in the lender taking over the property. Instead, the Court's reading prevents this unusual inconsistency.

The Court's interpretation of Section 9(b) to require a pro rata distribution is consistent with the other sections of the Participation Agreement, all of which provide for pro rata sharing. See, e.g., J.A. 14–15 (requiring BOES to remit payments from the borrower to MFB pro rata in Section 7); J.A. 17-18 (requiring ratable application of all collections received by BOES in Section 15(d)). Most notably, Section 8 provides that MFB "shall share pro-rata . . . any losses sustained in connection with the Loan." J.A. 15. If we read the Participation Agreement as MFB advocates, MFB would not share the losses on the loan pro rata. Indeed, if Section 9(b) called for "first out" distribution, MFB would not incur any loss on the loan. This proposed reading cannot stand, as it would "disregard[] a meaningful part of the language of the writing." Dumbarton Improvement Ass'n, 434 Md. at 52, 73 A.3d at 233.

Thus, applying Maryland law, we hold that the Participation Agreement provides for a pro rata distribution of the net proceeds from a foreclosure. Since the language of the Participation Agreement leaves no ambiguity on this issue, the

11

Court does not look to extrinsic evidence. We therefore affirm the District Court's grant of summary judgment to Commerce.

*B. THE ALLEGED MODIFICATION*

MFB maintains that even if the Participation Agreement requires a pro rata distribution of foreclosure proceeds, MFB and BOES modified the Participation Agreement, as documented in the Letter.[2] The District Court did not address this argument, but we can address it on appeal. We may decide an issue raised on cross-motions for summary judgment, rather than remand it, when "the facts are uncontroverted." Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal citation omitted).

Here, MFB argues that the Letter modified the Participation Agreement. The express language of the Letter, however, directly contradicts this argument. The Letter itself says that it "is to affirm" the Participation Agreement's terms. J.A. 128. Further, the Letter states that the condition discussed

---

[2] The Participation Agreement contains a clause requiring that both parties sign any modification. J.A. 18. The Letter does not bear the signature of an MFB representative, leading Commerce to argue that the Letter cannot modify the agreement. Maryland law, however, "may operate to allow supplementation or even modification of the express terms of a valid contract." 600 N. Frederick Rd., LLC v. Burlington Coat Factory of Md., LLC, 419 Md. 413, 438, 19 A.3d 837, 852 (2011). The Court need not reach this issue because, as explained below, it concludes that the Letter does not even purport to modify the contract.

"is contained in the Participation Agreement . . . Section 9(b)." J.A. 128. BOES sent the Letter in response to MFB's request for "*confirmation*" of the agreement. J.A. 125 (emphasis added). Clearly, the parties did not view the Letter as a modification then, nor can we now.

## III. CONCLUSION

To summarize, the Participation Agreement unambiguously requires distribution of foreclosure proceeds pro rata. Further, the Letter, by its very language, does not qualify as a modification. Thus, for the reasons stated above, we affirm the decision of the District Court granting summary judgment to Commerce.

<u>AFFIRMED</u>

13